JONAS GUILFORD *vs.* WESTERN UNION TELEGRAPH CO.

Argued Oct. 5, 1894. Modified Dec. 7, 1894.

No. 8862.

**Jurisdiction over foreign corporation, as to lost stock.**

An action may be maintained in the courts of this state by a stockholder against a foreign corporation to compel it to issue to him a new or duplicate stock certificate in place of one which has been lost or destroyed.

**Such action is not the exercise of visitorial powers.**

Upon the facts of this case the action does not fall within the rule that courts will not exercise visitorial powers over foreign corporations, or interfere with the management of their internal affairs.

**Former earlier action not res judicata.**

It is not *res judicata* by the judgment in a former action for the same relief that the plaintiff is not now entitled to it except upon the conditions then imposed, where, during the intervening time, the situation has been materially changed; as, for example, by the long lapse of time during which the lost certificate has not been heard of.

**The corporate charter is alone the contract with a stockholder.**

It is only the charter of the corporation, constituting the agreement between it and its stockholders, which will be recognized as binding in other states, and not the general laws of the foreign state, affecting merely the remedy, which govern only within the state enacting them.

**Stock certificate lost and unheard of for twelve years entitles the owner to a new certificate.**

The evidence being clear and satisfactory that the original certificate, unassigned, was lost over twelve years ago, during which time it has

never been heard of, and no other claimant for the stock or the dividends on it has appeared, *held*, that plaintiff is entitled to a new certificate without giving the bond of indemnity, with sureties, demanded by defendant.

Appeal by plaintiff, Jonas Guilford, from an order of the District Court of Hennepin County, *Robert Jamison*, J., made January 20, 1894, denying his motion for a new trial.

On February 8, 1882, Asa Guilford owned 370 shares of the stock of the defendant, The Western Union Telegraph Company, for which he held twelve certificates issued to him at various times from 1869 to 1880. He was nearly eighty years old and while in the city of New York on that day he lost these certificates. The next day he gave defendant notice of the loss and stopped transfer of them. Nothing has ever been heard of them since. He commenced an action June 16, 1882, in the District Court of Hennepin County against the defendant for new certificates in their place. Defendant appeared and offered new certificates if plaintiff would give a bond of indemnity with sureties in a sum double the par value of the stock. Plaintiff offered no indemnity. The issues were tried before the court without a jury. Findings were filed May 10, 1883, denying the relief demanded, because plaintiff did not offer to execute the bond of indemnity, and judgment was entered that plaintiff take nothing by the action. On July 23, 1883, Asa Guilford .sold and assigned the stock to Jonas Guilford, his son the plaintiff in this action, and transferred to him all his claims and causes of action against the defendant. On September 14, 1888, the plaintiff as assignee of Asa Guilford commenced an action in the same court against the defendant for new certificates of stock in place of those lost. The defendant made answer as before and in addition pleaded in bar the former action brought by Asa Guilford against it. This action was tried and findings filed April 1, 1889, denying relief unless a bond of indemnity should be given. No finding was made upon the plea in bar. Plaintiff moved for a new trial of that action, but was refused and he appealed to this court, but the decision was affirmed. *Guilford* v. *Western Union Tel. Co.*, 43 Minn. 434.

On September 3, 1891, Asa Guilford died intestate leaving plain-

tiff his sole heir at law. He was appointed sole administrator of his estate. On May 1, 1893, plaintiff commenced this third action against the defendant upon substantially the same facts and defendant made the same answer, pleading also the two former actions in bar. The issues were tried and findings filed January 10, 1894. The court found plaintiff to be the owner of the stock, and that the certificates were lost, and came to the same conclusion reached on the former trials, and required the plaintiff to give the bond of indemnity demanded by the defendant. The trial court also held that the plaintiff was barred by the former action, but that the bar might be removed by the lapse of time. That Laws 1893, ch. 45, did not apply to foreign corporations. That the indemnity asked by the defendant was in accordance with its rules which were binding upon the plaintiff. Plaintiff moved for a new trial, but was refused and he appeals.

*Jonas Guilford, pro se.*

A certificate of shares of stock of a company is merely a solemn affirmation under the seal of the company that a certain number of shares of stock stand in the name of the individual mentioned in the certificate. *Shropshire Union Ry. &c. Co. v. The Queen,* L. R. 7 H. L. 496–509; *Chaffin v. Cummings,* 37 Me. 76; *Beckett v. Houston,* 32 Ind. 393.

The certificate does not create the stock, it is only evidence of it; and in its absence, evidence of the ownership can otherwise be produced. *Slipher v. Earhart,* 83 Ind. 172; *Chesley v. Pierce,* 32 N. H. 388; *Barstow v. Savage Mining Co.,* 64 Cal. 388; *Mitchell v. Beckman,* 64 Cal. 117; *Burr v. Wilcox,* 22 N. Y. 551; *Brigham v. Mead,* 92 Mass. 245; *Young v. South Tredegar Iron Co.,* 85 Tenn. 189; *Hubbell v. Drexel,* 11 Fed. Rep. 115; *Van Allen v. Assessors,* 3 Wall. 53; *Bank of Commerce Appeal,* 73 Pa. St. 59; *McAllister v. Kuhn,* 96 U. S. 87. As nothing was said in this last decision about the obiter of Justice Davis in *Bank v. Lanier,* 11 Wall. 369, that obiter is no longer the law in that court, if it ever was law there. Justice Davis at this time was not a member of the bench. Certificates of stock are not negotiable securities. They are simply the muniments and evidence of the holder's title. They

are like title deeds to land. *Mechanics Bank* v. *New York & N. H. R. Co.*, 13 N. Y. 599; *Kimball* v. *Davis*, 52 Mo. App. 194.

A different definition of a stock certificate was originated by Judge Dwight of New York City when he was one of the commissioners of appeals. *Holbrook* v. *New Jersey Zinc Co.*, 57 N. Y. 616. His definition is based upon one made by the House of Lords. *Shropshire Union Ry. &c. Co.* v. *The Queen*, L. R. 7 H. L. 509. He changes the words "solemn affirmation" to "continuing affirmation" and adds the doctrine of estoppel. It is only another attempt to make them quasi negotiable. The matter seems to have been subsequently brought before the New York Court of Appeals, and without noticing Judge Dwight's decision, they still continue to hold the stock certificate only evidence of title. *Burrall* v. *Bushwick R. Co.*, 75 N. Y. 211; *People ex rel.* v. *Assessors*, 76 N. Y. 202. See *Matthews* v. *Massachusetts Nat. Bank*, 14 Am. Law Reg. (N. S.) 153, and note appended.

Notwithstanding the most strenuous efforts of speculators in stocks to have them recognized as negotiable in order to exclude the equities of former owners, and thus enable them to buy them safely of thieves and burglars and other fraudulent operators in the market, the courts have strenuously refused to endorse their schemes, and we hope they will continue to resist them to the end.

This court seems to have adopted a definition of a stock certificate designed to facilitate their use by bankers and brokers, and has attempted to give it a meaning which is contrary to the elementary principles of law. In *Joslyn* v. *The St. Paul Distilling Co.*, 44 Minn. 183, it is said: "The certificate itself must be regarded as a *continuing* affirmation of the ownership by the person to whom it has been issued, and of his power over and right to sell the stock, until this power and right has lawfully terminated," citing *Bank* v. *Lanier*, 11 Wall. 369, and *Holbrook* v. *New Jersey Zinc Co.*, 57 N. Y. 616. But most of the states maintain a different doctrine from this, as will be found upon examination. Fraud vitiates all things, but it does not vitiate a stock certificate, according to this doctrine. This is extending to a stock certificate all the legal privileges given commercial paper. It opens the doors to gigantic

frauds, and will check corporate enterprises. It is desirable for the people of this state who live outside the commercial community to know as early as possible whether this court intends to abide by that decision, which makes a stock certificate a slippery investment, and virtually puts this kind of property beyond the reach of creditors, unless they can get manual possession of the certificates. If the court desires to uphold that decision in *Joslyn* v. *The St. Paul Distilling Co.*, 44 Minn. 183, it should tell us what the phrase, "until this power and right has lawfully terminated," means. What is its legal intention? The court will have numerous difficulties with this new departure, and the corporations will have more, in inducing people to buy their stock when the doctrine of this court becomes fully known. Appellant thinks that the contrary doctrine, now nearly universal, should be adopted; that the stock certificates are only evidence.

There is no necessity for a bond of indemnity to the defendant to save it harmless from the consequences of the issue of new certificates. Defendant does not need a bond for its protection. If Asa Guilford lost his certificates, as he says he did, and if as he says, they were unindorsed or unassigned, then a finder certainly could make no use of them. The law is now well settled upon that point, and is beyond controversy. *Barstow* v. *Savage Mining Co.*, 64 Cal. 388; *East Birmingham Land Co.* v. *Dennis*, 85 Ala. 565. The doctrine of *caveat emptor* applies to this kind of property, as it does to all other kinds, and the purchaser must investigate the title. *Friedlander* v. *Slaughter House Co.*, 31 La. An. 523; *Sprague* v. *Cocheco Mfg. Co.*, 10 Blatchf. 173; *Dudman* v. *Earl*, 49 Ia. 37.

Upon the former appeal this court did not examine the grounds of the controversy, but held plaintiff barred by the judgment in the District Court in the case of *Asa Guilford* v. *Western Union Telegraph Company*. *Guilford* v. *Western U. Tel. Co.*, 43 Minn. 434. But that point seems to have been abandoned in the opinion given after the reargument of that case, p. 437.

The court below states that the equitable rule recognized by all the courts requires the giving of indemnity in such cases. There are only two courts of last resort in the United States which have

passed upon this question, and they do not sustain the statement. *State ex rel.* v. *New Orleans Gas Light Co.*, 25 La. An. 413; *Galveston City Co.* v. *Sibley*, 56 Tex. 269.

There is no value in the certificates *per se.* The finder can get no title. There is no quality of commercial paper about them. The only question about this matter is whether Asa Guilford sold the stock and pretended to lose it.

The trial court holds that Laws 1893, ch. 45, does not apply to this case, but applies to domestic corporations only. The act is not so restricted. All statutes concerning jurisdiction are general, unless restricted by the statute itself. By the terms of this act plaintiff is entitled to relief if it applies to foreign corporations.

*C. M. Ferguson*, for respondent.

Stock certificates, although neither in form or character negotiable paper, approximate to it as nearly as practicable. A purchaser of them is told under the seal of the corporation that the holder is entitled to the shares stated therein. It is notice to all persons interested that whoever produces the stock can sell it and the purchaser will be entitled to have it transferred to his name on the books of the corporation. If Asa Guilford sold the stock, or if it was lost with the transfer duly signed by him and with the name of the purchaser left blank, then defendant could be compelled to recognize the title as valid, and it has a right to ask for indemnity against such a claim. The drift of the authorities is unchanged since the former appeal. Not only that, but there is no opposing decision to disturb their current. On the contrary, we have a later decision of this court in *Joslyn* v. *St. Paul Distilling Co.*, 44 Minn. 183. Our position is supported by *Bank* v. *Lanier*, 11 Wall. 369; *Factors &c. Ins. Co.* v. *Marine Dry Dock &c. Co.*, 31 La. An. 149; *Holbrook* v. *New Jersey Zinc Co.*, 57 N. Y. 616; *New York & N. H. R. Co.* v. *Schuyler*, 34 N. Y. 30; *National Bank* v. *Lake Shore & M. S. Ry. Co.*, 21 Ohio St. 221; *Bridgeport Bank* v. *New York & N. H. R. Co.*, 30 Conn. 231; *Strange* v. *Houston & Tex. C. R. Co.*, 53 Tex. 162; *McNeil* v. *Tenth Nat. Bank*, 46 N. Y. 325; *Leitch* v. *Wells*, 48 N. Y. 585; *Eby* v. *Guest*, 94 Pa. St. 160; *Broadway Bank* v. *McEl-*

*rath*, 13 N. J. Eq. 24; *Galveston City Co.* v. *Sibley*, 56 Tex. 269; *Cornick* v. *Richards*, 3 Lea, 1; *Cherry* v. *Frost*, 7 Lea 1; *Van Norman* v. *Circuit Judge*, 45 Mich. 204; *Continental Nat. Bank* v. *Eliot Nat. Bank*, 7 Fed. Rep. 369; *Scott* v. *Pequonnock Nat. Bank*, 15 Fed. Rep. 500; *Hazard* v. *National Exch. Bank*, 26 Fed. Rep. 94; *Lund* v. *Wheaton Roller Mill Co.*, 50 Minn. 36.

It is to be remembered that the judgment which was held a bar by this court on the former appeal was entered upon the holding that the rule of the corporation was not unreasonable and was binding on the plaintiff as a stockholder; and that plaintiff, having refused to comply therewith, had no cause of action. That is the *res judicata*. No lapse of time or presumption of fact can affect the force of that judgment.

A corporation is an artificial being, invisible, intangible and existing only in contemplation of law and is only subject to control in its internal organization and its relations with the natural persons who are its members, by the legislature of the state which created it. The statute of another state may regulate the manner in which it shall transact its business with the public in such other state; it may tax it, restrict it, or prohibit it altogether. But no foreign state, either by its legislature or its courts, can interfere with its internal organization or its corporate relations with its members. *North State Copper &c. Min. Co.* v. *Field*, 64 Md. 151; *Kansas Const. Co.* v. *Topeka Railroad*, 135 Mass. 34; *Smith* v. *Mutual Life Ins. Co.*, 96 Mass. 336; *Kimball* v. *St. Louis & S. F. Ry. Co.*, 157 Mass. 7; *Howell* v. *Chicago & N. W. Ry. Co.*, 51 Barb. 378; *Gregory* v. *New York, L. E. & W. R. Co.*, 40 N. J. Eq. 38; *Glenn* v. *Liggett*, 135 U. S. 535; *New Haven Horse Nail Co.* v. *Linden Spring Co.*, 142 Mass. 349.

MITCHELL, J. This action was brought to have the plaintiff adjudged the owner of certain shares of the stock of the defendant company, and to compel the company to issue to him new certificates therefor in place of the originals, which are alleged to have been lost, and, if the defendant refuses to issue the same, that plaintiff have judgment against it for the value of the stock.

It is not questioned but that one Asa Guilford, plaintiff's father, now deceased, was once the owner of the stock, and that plaintiff, a citizen of this state, is his assignee, sole heir, or next of kin, as well as the administrator of his estate, and hence the owner of the stock, unless Asa Guilford had, in his lifetime, previously transferred it to some one else. The stock certificates are alleged to have been lost by Asa in February, 1882. The defendant has always been willing to issue to plaintiff new certificates on condition that he first execute to it a bond with two sureties in double the amount of the value of the stock (over $35,000) to indemnify it against the original certificates in case they should turn up in the hands of a third party. This condition the plaintiff has been unable to comply with. This is the third action which has been brought for the same relief,—one in 1882, by Asa Guilford; the second, by plaintiff, in 1888, affirmed on appeal 43 Minn. 434, (46 N. W. 70); and the present action, in 1893,—the judgment in each case being the same, to wit, that the plaintiff was entitled to new certificates only on first giving the bond required by the defendant. The facts in the present action are the same as in the previous actions, except the additional lapse of time during which the original certificates still remain undiscovered, and no other claimant for the stock has appeared, and that in the meantime the legislature of this state has enacted a statute (Laws 1893, ch. 45) providing for the renewal of stock certificates when worn out, lost, or destroyed.

The defendant is a corporation organized under the laws of the state of New York, where its principal place of business is located, and where all its general officers reside, and where all its stock and other books are kept. The only business transacted by it in this state is the maintenance of telegraph lines and the transmission of telegrams, for which purpose exclusively it has local agents here.

1. The defendant, both in its answer and on the argument, makes the point (not raised on the appeal in the former action) that the courts of this state have no jurisdiction of the subject-matter of the action, because it pertains solely to the management of the internal affairs of a foreign corporation.

The doctrine is well settled that courts will not exercise visitorial

powers over foreign corporations, or interfere with the management of their internal affairs. Such matters must be settled by the courts of the state creating the corporation. This rule rests upon a broader and deeper foundation than the mere want of jurisdiction in the ordinary sense of that word. It involves the extent of the authority of the state (from which its courts derive all their powers) over foreign corporations. The only difficulty is in drawing the line of demarkation between matters which do and those which do not pertain to the management of the internal affairs of a corporation.

To entertain an action to dissolve a corporation, to determine the validity of its organization; to determine which of two rival organizations is the legal one, or who of rival claimants are its legal officers; to restrain it from declaring a dividend, or to compel it to make one; to restrain it from issuing its bonds, or from making an additional issue of stock,—would clearly all be the exercise of visitorial powers over the corporation, or an interference with the management of its internal affairs. But the distinction between any of these cases and the one at bar seems to us very apparent. None of the cases cited by defendant's counsel fully support his contention. Those which at first sight seem most nearly in point are *Smith* v. *Mutual Life Ins. Co.*, 96 Mass. 336, and *North Star Mining Co.* v. *Field*, 64 Md. 151 (20 Atl. 1039,) both of which, we think, may be distinguished from the case at bar.

In the first of these cases the plaintiff himself was a citizen of Alabama, and had never lived in Massachusetts,—a fact upon which the court lays much stress, and which alone would probably have justified a court of equity, in the exercise of its discretion, in declining to entertain the bill. Moreover, in that case the insurance company, a mutual one, had declared the plaintiff's policy forfeited for the nonpayment of premiums, and the relief sought was to have the policy revived or restored on the ground that the default of the plaintiff was excusable because of the existence of facts which rendered it impossible to pay his premiums. And the court says upon plaintiff's bill it appears that there is not even an existing contract between the parties. The proceeding is based upon a past relation growing out of a contract made without the jurisdiction, which by its own terms has ceased to be operative, and which.

the plaintiff seeks to revive as an executory obligation, and reinstate him as a member of the corporation, his right to which necessarily depended on the local statute law of the state which created the corporation.

In *North Star Mining Co.* v. *Field, supra,* the corporation had declared the plaintiff's stock forfeited for the nonpayment of an assessment, and the latter brought suit to be reinstated as a stockholder in the books of the company, and restored to all his rights as such, alleging that the assessment was illegal and void. As the legality of the assessment and the right of the company to declare the stock forfeited for its nonpayment depended on the charter of the company and the peculiar statute law of the state creating it, the court refused to entertain the bill. But in the present case there is no question as to the issue, validity, or forfeiture of the stock. There is not even any controversy as to the right of the plaintiff to a certificate as evidence of his title. The only dispute is over the terms or conditions upon which that certificate shall be issued. We do not see how the granting of such relief is, in any proper sense, the exercise of visitorial powers, or an interference with the management of the internal affairs of the defendant.

Statements are sometimes found to the effect that where the act of the corporation complained of affects a person solely in his capacity as a member of the corporation, or where the rights of a person grow solely out of his membership in the corporation, and not out of some external transaction, the subject relates to the management of the internal affairs of the corporation, over which the courts of another state should not assume jurisdiction. Such general statements must always be construed in connection with the particular facts of the cases in which they are used. Moreover, such statements are not strictly correct as abstract propositions in the broad and unqualified sense in which they are sometimes understood. We think there are cases, and that this is one of them, where, although the rights of a party grow out of his membership in the corporation, yet, as the matter affects only his individual rights under the contract by which the stock was issued, therefore an enforcement of those rights will not be an interference with the internal management of the corporate affairs within the meaning of the rule.

If upon principles of law or comity foreign corporations are allowed to do business and maintain suits in another state, the general rule should be that they are liable to be sued in the same jurisdiction. Their rights and liabilities in that regard ought to be reciprocal. If we recognize their existence for one purpose, we ought also for the other. If our courts admit and vindicate their rights, justice requires that we also enforce their liabilities, and that, before we send our own citizens to a foreign jurisdiction for redress, it should be very clear that the subject of the action is beyond the limits .of the power or sovereignty of the state over the foreign corporation. If a citizen of this state held a certificate of stock in a foreign corporation, which was alleged to have been illegally issued, or to have for some cause become forfeited, we do not think there would be any doubt but that our courts would entertain a suit by the corporation to compel its surrender and cancellation. If so, why ought not a citizen of the state to be allowed to maintain an action to compel the issue to him, as evidence of his title, of a new certificate in place of one that has been lost or destroyed?

It is urged that if the courts of this state entertain jurisdiction of such a case they may impose different conditions upon the issue of the certificate from those that might be imposed by the courts of New York or of other states under the same state of facts. This must be conceded. It is one of the necessary imperfections in the administration of justice that courts of different, and even of the same, jurisdictions will differ as to the law applicable to the same state of facts. But it was never heard that this of itself was any reason why a court should not exercise jurisdiction. It is also contended that the courts of this state ought not to entertain the action because they have no means to enforce their decree by compelling the issue of a certificate.

It is undoubtedly true that courts will not entertain an action where it is apparent that if a judgment was rendered they would be wholly unable to enforce it. But the mere fact that they may be unable to compel specific performance in a particular way is no reason why the suit should not be entertained. If the defendant should refuse to issue certificates in accordance with the judgment, it would be entirely competent for the court, in accordance

with the prayer of the complaint, to render judgment for the value of the stock. Our conclusion is that the action can be maintained. In so holding we do not wish to be understood as deciding that the courts of this state could or should assume jurisdiction of every suit to compel the issue of stock certificates by a foreign corporation. We can conceive that many such cases might arise that would include elements involving the management of the internal affairs of the corporation. Our decision is confined to the facts of this case.

2. It is contended by defendant that it is res judicata by the judgments in the former actions that plaintiff is entitled to new certificates only upon the condition therein prescribed, to wit, the giving of a bond of indemnity with two sureties to the amount of double the value of the stock. We think not. The facts that over four and a half years have elapsed since the last action, and that during that time the stock certificates have not been heard from, and no other claimant, for either the stock or the dividends upon it, has appeared, to say nothing of the subsequent declaration of legislative policy by Laws 1893, ch. 45, as to the terms upon which new stock certificates shall be issued, have so materially changed the situation that it does not follow that the same conditions should be imposed now which were imposed at the dates of either of the former judgments. Whether the proper practice in such a case is to bring a new action, or, upon supplemental complaint, to ask for the modification of the decree in the former suit, is a question not before us, and which we need not consider.

3. The defendant pleaded in its answer a general law of the state of New York (Laws 1873, ch. 151, substantially re-enacted by Laws 1892, ch. 688, §§ 50, 51), providing a method of obtaining new stock certificates in place of originals which have been lost. This statute, it is claimed, is binding on the plaintiff, as furnishing him his exclusive remedy. There is nothing in this point. This stateute is no part of the charter of the defendant, which constitutes the agreement between the corporation and its stockholders, and which alone is recognized in other states. It is merely one of the general laws and regulations of the state of New York affecting the remedy, which govern only within the limits of the state enacting them.

4. The defendant also alleges a rule of the corporation providing that new certificates in place of lost certificates of its capital stock shall only be issued upon the condition, among others, that the applicant shall execute to the company a bond with two sureties in double the par value of the stock, to indemnify it against the original certificates. This rule, it is claimed, is binding upon plaintiff as part of the contract between the corporation and all of its stockholders. The evidence, however, fails to prove any such rule or by-law. All that appears is that it has been the uniform custom or practice of the defendant to issue new certificates only upon the execution of such a bond.

5. This brings us to the last question in the case, viz. whether, upon the facts, the plaintiff is entitled to new certificates without being required to give the bond with sureties exacted by defendant. The evidence of the loss of the original certificates, unassigned by the then holder, Asa Guilford, is, in our opinion, as clear and conclusive as it is usually possible to produce. The most conclusive proof of that fact is that, although the certificates disappeared over twelve years ago, during all of which time regular dividends on the stock have been declared, yet they have never been heard of, and no other claimant for either the stock or dividends has ever appeared.

Laws 1893, ch. 45, provides: "If the evidence is clear that said certificate has been lost or destroyed, and it has not been heard of for a period of seven years, it shall be the duty of said corporation to issue a new certificate without indemnity."

We do not agree with plaintiff's contention that the effect of this statute is to give the courts of this state jurisdiction over foreign corporations which they would not otherwise have. Neither are we prepared to assent to the contention of defendant that it applies only to domestic corporations. There is nothing in the language of the act inconsistent with the view that it is applicable to all corporations, whether domestic or foreign, in all cases of which the courts have jurisdiction according to existing rules of law, and that, as a declaration of legislative policy relating merely to the remedy, it was intended to be binding on the courts in all cases falling within their jurisdiction. If this is so, it would be decisive of this case. But, independently of the statute, we are of

opinion that upon the facts the plaintiff is entitled, upon general legal principles, to new certificates, without being required to give the bond exacted by defendant.

In the first place, under the facts stated at the outset, and about which there is no dispute, the case stands precisely as if Asa Guilford admittedly once the owner of the stock, was the plaintiff. The only liability or chance of loss on part of the company which it is pretended could result from its issuing new certificates arises out of the possibility that it may be untrue that Asa Guilford lost the certificates unassigned, but that he may have assigned them to some other person, or may have lost them with an assignment indorsed, but blank as to the name of the assignee, and that the certificates may yet turn up in the hands of an innocent purchaser for value. But these stock certificates are not negotiable. Neither are they the stock, but merely the evidence of the title to it. If the defendant would be liable to the holders of the original certificates in case they appear after the issue of new ones, it must be on the ground that it will be estopped to deny their title to the stock. In a stock certificate the corporation certifies that at the date of its issue the person therein named is the owner of the specified number of shares of its stock. That fact it would undoubtedly be estopped to deny as against a *bona fide* purchaser for value. But the certificate contains no representation or warranty that the party to whom it is issued will continue to be the owner of the stock for any particular length of time, or until some future act is done or event occurs. If any such representation is to be read into the certificate, it must be by implication. It certainly cannot be found in its language. The only authority for reading any such implied representation into a stock certificate is certain *dicta* in *Bank* v. *Lanier*, 11 Wall. 369, and *Holbrook* v. *New Jersey Zinc Co.*, 57 N. Y. 616.

In the first of these cases a remark is made to the effect that the issuing of a certificate amounts to a notification and assurance to all persons interested to know that the corporation will not transfer the stock to any one not in possession of the certificate.

In the second case it is said that a stock certificate is a continuing affirmation of the ownership of the specified amount of stock by the person designated therein or his assignee, until it is withdrawn

in some manner recognized by law, and that a purchaser in good faith has a right to rely thereon, and to claim the benefit of an estoppel in his favor as against the corporation. Notwithstanding that these *dicta* are quoted approvingly by this court in *Joslyn* v. *St. Paul Distilling Co.*, 44 Minn. 186, (46 N. W. 377,) we do not think that they are fully supported by the authorities, or contain an accurate statement o. i          a ·n the broad and unqualified terms in which they are expressed. If they are, then it seems to us that a corporation could never be compelled to issue a new or duplicate certificate in place of one that was lost or destroyed, and could never safely do so, however clear and strong the proof of the loss. Neither do we see how the purchaser of corporate stock at an execution sale could ever get any evidence of his title, except in those exceptional cases where the officer executing the writ happened to succeed in getting possession of the stock certificate. It seems to us that if there is any liability on part of the corporation, or any estoppel against it in such cases in favor of the holder of the original certificate, it must be predicated on the ground of negligence or want of reasonable care, and not upon the theory of an implied continuing affirmation contained in the certificate.

It is, of course, well understood that in business circles corporate stock is bought and sold by the assignment and delivery of the certificate. Frequently an assignment is indorsed with the name of the assignee blank, and the stock is then sold by the mere delivery of the certificate, the last holder having the right to fill up the blank. It is also the general custom of corporations not to make a transfer of stock on their books or to issue a new certificate without the presentation, and surrender, of the original. In view of this, reasonable care would undoubtedly require that, under any ordinary circumstances, a corporation should not issue a new certificate without the surrender of the original. It would also doubtless require that they should never do so without quite clear proof that the applicant is entitled to it, and that the original was actually lost or destroyed, of which facts lapse of time without the appearance of any rival claimant would be the most satisfactory evidence.

But if the corporation, in the exercise of proper care, does issue a new certificate, we do not see how it could suffer any loss, even

if the original certificate should afterwards turn up. If there is any contest, it would be between the holders of the two certificates as to which was the owner of the stock. Moreover, in this case, if the original certificate should ever appear in the hands of another claimant, it seems to us clear that he would be estopped from claiming any damages against the defendant by reason of his own laches in neglecting for over twelve years either to claim the dividends or to present his certificate and demand a transfer of the stock to himself on the books of the company.

The cause is remanded, with directions to the court below to modify its judgment in accordance with this opinion.

GILFILLAN, C. J., absent on account of sickness, took no part.

CANTY, J., took no part.

(Opinion published 61 N. W. 324.)