## DUNHAM v. MARINE MIDLAND TRUST CO. OF NEW YORK.

No. 25831.   May 21, 1935.

Rehearing Denied November 5, 1935.

Second Petition for Rehearing Denied January 7, 1936.

Withdrawn, Corrected, and Refiled Jan. 14, 1936.

B. M. Parmenter and Harlan Grimes, for plaintiff in error.

E. H. Sykes, Sullivan & Cromwell, Morgan W. Eddleman, and Miley, Hoffman, Williams, France & Johnson, for defendant in error.

GIBSON, J.   This appeal presents for review an order of the district court of Oklahoma county sustaining the plea of the defendant in error, hereinafter referred to as defendant, to the jurisdiction of its person in an action for damages alleged to have been sustained by plaintiff in error, hereinafter referred to as plaintiff, growing out of an alleged conspiracy on the part of defendant and certain parties in Oklahoma whereby plaintiff was induced to subscribe

to certain stock of the Western Service Corporation to her damage.

Plaintiff sought to obtain service of summons upon the defendant under the provisions of section 126, O. S. 1931, which provides for a substitute method of service upon foreign corporations doing business in Oklahoma in personal actions arising out of such business, where such corporations have not complied with the state law requiring the appointment of an agent upon whom service of process may be had, as provided by section 130, O. S. 1931.

The material alleged facts upon which the plaintiff bases her action for damages against the defendant and its codefendants are as follows:

The Western Service Corporation and Earl R. Ernsberger & Co., Inc., are corporations incorporated under the laws of Delaware and having their principal place of business and offices at Oklahoma City, Okla.; that the Western Service Corporation was carrying on a campaign to sell more than a million dollars of its shares of stock; that it contracted with Earl R. Ernsberger & Co., Inc., to conduct and carry on its sales; that the stock of the Western Service Corporation was being sold without the Western Service Corporation having complied with the so-called Blue Sky Law of Oklahoma; that its stock was of such character that it could not be sold in Oklahoma without complying with the Blue Sky Law; that approximately $770,000 of such stock was sold in Oklahoma; that the plaintiff, who at all times resided in Oklahoma City, purchased over $22,000 of said stock; that when a sale of stock was made (and there were about 60 agents engaged in the sale of the same), the purchase order would be placed with the Western Service Corporation by Earl R. Ernsberger & Co., Inc.; the Western Service Corporation in turn would forward to the defendant, the Marine Midland Trust Company of New York, transfer agent, requisitions for certificates of stock, stating the name and address of the purchaser, the number of shares purchased, the kind of stock, and thereupon the Marine Midland Trust Company, which had in its possession blank certificates of stock theretofore deposited with it by the Western Service Corporation, would date the same, fill in the name of the purchaser, the number of shares purchased, and on one end of the certificate under the word "countersign" it would sign the same on a line under which were the words "Transfer Agent." That the Marine Midland Trust Company would then transmit the same to the Chemi-

cal Bank & Trust Company of New York, which bank would affix its signature on the face of the certificate under the word "registered" and on a provided line, under which was the word "Registrar." Thereupon the Chemical Bank & Trust Company would transmit the certificate so registered back to the Marine Midland Trust Company, and it in turn would thereupon transmit the same through the United States mail to the Western Service Corporation at Oklahoma City, which corporation would then cause the certificate to be delivered to the purchaser, who, in the present case, is the plaintiff in this action. There was printed in the face of the certificate the following:

"This Certificate Is not Valid Unless Countersigned by the Transfer Agent and Registered by the Registrar."

That 222,868 shares were thus registered and sold, and with the exception of five sales they were all sold in Oklahoma; the offices of the Marine Midland Trust Company and of the Chemical Bank & Trust Company were in New York City at all times; that the business of the Western Service Corporation and that of Earl R. Ernsberger & Co., Inc., was conducted and carried on by boards of directors at Oklahoma City. Plaintiff purchased 558 shares of the stock at $37.50 per share and agreed to purchase more and made installment payments thereon in the sum of $1,000. The agreement to purchase, the purchase, and the delivery of the certificates of stock were all made in Oklahoma. The defendant was compensated for the services rendered at the agreed rate of $1 per certificate, with a minimum compensation of $500 per annum, by Western Service Corporation: that 947 certificates were delivered in Oklahoma.

Upon these alleged facts, and upon the evidence on the question of conspiracy, the trial court found that no conspiracy ever existed between the defendant and its codefendants in Oklahoma. The effect of the findings was that the acts done by defendant did not constitute "doing business" in Oklahoma. The court sustained the defendant's plea to the jurisdiction of the court, and quashed the service of summons obtained by serving the Secretary of State.

Plaintiff argues: First. That defendant, and the Western Service Corporation, and Earl R. Ernsberger & Company, Inc., and all their salesmen in Oklahoma were engaged in a conspiracy to defeat the state's Blue Sky Law and, as a result thereof, each participant become an agent for the others as conspirators or joint tort-feasors, and

the defendant was therefore doing business in Oklahoma through its agents so created by operation of law.

Second. That the United States mail was the agent of defendant for the purpose of delivering the stock certificate within the state of Oklahoma.

Third. The defendant has property in Oklahoma in the nature of an allowed claim with a federal receiver for the Western Service Corporation, which claim is subject to garnishment and furnishes the essential element to sustain service of summons through the Secretary of State as provided for in section 126, O. S. 1931.

In support of the first proposition, as to the existence of the relationship of principal and agent among coconspirators or joint tort-feasors, plaintiff cites numerous authorities, with all of which we agree. 12 C. J. 610. Counsel cite no authority, however, in support of the theory that a foreign corporation is said to be doing business in the state through agents created by operation of law. Assuming for the moment that the defendant could be said to be "doing business" in this state through a constructive agency, it is incumbent upon the plaintiff first to establish the existence of such relationship. To establish the same through conspiracy, it was necessary for plaintiff to prove the elements thereof, which, as stated in 5 R. C. L. 1061, are as follows:

"A conspiracy is a combination of two or more parties, by some concerted action, to accomplish some criminal or unlawful purpose, or to accomplish some purpose not in itself criminal or unlawful by criminal or unlawful means."

It is sufficient if the act to be committed afford a ground of action either civilly or criminally. 12 C. J. 581.

Plaintiff says the act to be accomplished was the sale of stock in Oklahoma, and that such sale was unlawful. It was therefore unnecessary for plaintiff to prove that the defendant was a member of the alleged combination or a party to the concerted action to accomplish the common design of selling the stock in Oklahoma contrary to the laws of the state.

The trial court has held that no conspiracy existed. Its judgment was based upon the admissions of the parties and the evidence offered at the hearing. The contract of employment whereby the defendant was engaged as transfer agent reveals no unlawful undertaking on the part of defendant, neither can such unlawful undertak-

ing be implied from the terms of the contract. The defendant was engaged by a Delaware corporation to issue and transfer its stock, and there is nothing in the record indicating that the issuance of the stock in question was a violation of the laws of Delaware. The issuance and transfer of the stock were made in the state of New York; the issuance of such stock in New York, so far as the record discloses, was lawful, and the act being legitimate, there is no overt unlawful act from which to supply wrongful intent, or agreement, to carry out a conspiracy. The employment agreement, then, has furnished no basis upon which to establish a conspiracy. In order for a conspiracy to exist there must be another and wholly independent agreement, express or implied, from which may be erected a conspiracy to defeat the laws of Oklahoma. The existence thereof is a question of fact. Such fact may be inferred from the circumstances and concurring acts of the parties, and direct proof thereof is not required. Wharton, Criminal Law (10th Ed.) 1398; Chadwick v. U. S. (C. C. A. 6) 141 Fed. 225-241. The trial court heard all the evidence, and has found against plaintiff's contention, and its finding and judgment are reasonably supported by such evidence. We find no evidence in the record from which a conspiracy may be reasonably inferred.

The defendant was employed to do certain acts in New York by parties who happened to be in Oklahoma. Its contract of employment was valid in New York. It had no agents or representatives in Oklahoma as a matter of fact or by construction of law. It was therefore not present and doing business in this state.

Plaintiff says the defendant delivered the certificates in Oklahoma through the agency of the United States mail; that the certificates were under defendant's control until delivered to the addressee. Denison v. Phipps, 87 Okla. 299, 211 P. 83. We see nothing in this fact to warrant the inference that the defendant was present and doing business in Oklahoma. Rosenberg Bros. & Co. v. Curtis Brown Co., 260 U. S. 516, 67 L. Ed. 372. Defendant fulfilled its duties as transfer agent at the point of mailing the certificates to its principal.

Plaintiff says the defendant has property in Oklahoma in the nature of an allowed claim with the federal receiver of the Western Service Corporation; that such property furnishes the essential element to sustain service of summons upon the Secretary of State under section 126, supra. We do

464

not agree with this contention. The act of defendant in attempting to collect its debt in this state cannot be termed "doing business" here. J. P. Bledsoe & Son v. W. B. Young Supply Co., 44 Okla. 609, 145 P. 1125.

The acts of the defendant are insufficient to warrant the inference that it was present in the state. It transacted no business here, and therefore has not submitted itself to personal service of summons upon the Secretary of State.

The judgment is affirmed.

McNEILL, C. J., and BUSBY, BAYLESS, and CORN, JJ., concur.