## DUNHAM v. CHEMICAL BANK & TRUST CO. et al.

No. 26870.   July 13, 1937.

Rehearing Denied Sept. 14, 1937.

B. M. Parmenter and Harlan Grimes, for plaintiff in error.

Shearman & Sterling, McClellan & Shrewbury, Miley, Hoffman, Williams, France & Johnson, John H. Miley, and Morgan W. Eddleman, for defendant in error Chemical Bank & Trust Company.

Frantz C. Conrad and Paul Pugh, for defendants Dean M. Stacy and J. Murray Henry.

Darrough & Foster, for defendant in error D. W. Ohern.

Thurman & Thurman, for defendant in error T. E. Braniff.

Charles Hill Johns, for defendant in error P. A. Janeway.

A. L. Jeffrey, for defendant in error Albert C. Hunt.

Clearman & Ellis, for defendant in error J. D. Garnett.

BAYLESS, V. C. J. This case originated in the district court of Oklahoma county, where the plaintiff in error, hereinafter referred to as plaintiff, sought to recover damages in an action sounding in tort and arising out of certain purchases made by

her of certificates of stock in the Western Service Corporation, a corporation. Her action was directed against the defendants in error, D. W. Ohern, J. Murray Henry, Dean M. Stacy, P. A. Janeway, T. E. Braniff, Albert C. Hunt, and the Chemical Bank & Trust Company, a corporation. The Marine Midland Trust Company of New York also was named in plaintiff's petition as a party defendant, but went out of the case through having its plea to the jurisdiction of its person sustained by the trial court, which action on the part of the trial court subsequently was affirmed by this court. See Dunham v. Marine Midland Trust Co., 175 Okla. 461, 53 P. (2d) 254. Certain other individuals also were named in her petition as parties defendant, but the record before us does not disclose that they were served with process or ever entered their appearance in the case in any manner.

In the trial court, at the conclusion of the evidence on behalf of plaintiff, the court sustained demurrers to the evidence as to the defendants Chemical Bank & Trust Company and Albert C. Hunt. Thereafter evidence was introduced on behalf of the defendants Ohern, Henry, Stacy, Janeway, Garnett, and Braniff, and the cause submitted to the jury as to them. Separate general verdicts were returned by the jury in favor of each of said named defendants. And from the judgments rendered in the trial court in favor of the Chemical Bank & Trust Company, Albert C. Hunt, and the other defendants last named, the plaintiff has appealed.

The Western Service Corporation was incorporated under the laws of the state of Delaware in the early part of May, 1930, and thereafter was admitted to do business as a corporation within the state of Oklahoma. Its principal place of business in Oklahoma being Oklahoma City, where it maintained its offices. The total number of shares of all classes of stock authorized in its certificate of incorporation to be issued was $500,000, of which 100,000 shares was to be preferred stock without par value, and 400,000 shares was to be common stock without par value.

Said corporation engaged the services of Earl R. Ernsberger & Co., Inc., another corporation organized under the laws of Delaware, to conduct a sales campaign for the sale of its stock. And through Earl R. Ernsberger & Co., Inc., plaintiff purchased 558 shares of the preferred stock at $37.50 per share, and agreed to purchase more for which she made certain payments thereon. The agreement to purchase, the purchase, and the delivery of the certificates of stock were all made in Oklahoma. And in making and consummating said stock sale transactions there was no previous compliance, in any respect, by the Western Service Corporation, with the then existing Blue Sky Statutes of Oklahoma.

No contention appears to be made that stock in the Western Service Corporation was issued in excess of its authorized capital, or that the stock issued to plaintiff was watered stock or fictitiously paid up stock. But according to the statement of plaintiff's counsel, in their brief, "plaintiff's case is predicated upon the facts that she was defrauded in the purchase of shares of stock in the Western Service Corporation; that under the Blue Sky Law no permit to sell the same had been granted and because the sale was in violation of the Blue Sky Law the stock was null, void and valueless, and the defendants in error all having had something to do with the promotion and issuance and sale of the stock are jointly and severally liable."

We will consider first whether failure and omission of the Western Service Corporation to obtain from the State Issues Commission of Oklahoma a permit, under which it would be permitted and authorized to sell its stock in Oklahoma, rendered the certificates of stock in said corporation purchased by plaintiff null and void. We have found no statute of this state so declaring. The Blue Sky Statutes as enacted in 1919 (chapter 49, S. L. 1919; C. O. S. 1921, secs. 2270-2285), contain no such declaration, but merely prohibit the making of sales of speculative securities until certain requirements therein provided have been met, and declare that the commission of any act declared unlawful by certain sections thereof shall constitute a felony, the penalty therefor being provided. It was, however, by subsequent enactment (S. L. 1931, ch. 24, art. 2, sec. 16; Okla. Statutes 1931, sec. 4912) provided for such sales to be "voidable at the election of the purchaser."

In contending that, for the reasons aforementioned, the stock which she purchased was null and void, the plaintiff necessarily must take the position that the provision of our Blue Sky Statutes, making the authorization of the State Issues Commission a prerequisite to the issuance of stock, is applicable to foreign and domestic corporations alike. The defendants in error take

the position that the issuance of stock in a corporation is essentially an internal function thereof, cognizable and regulatable only under the laws of the state creating the corporation. And we are of a like opinion. It undoubtedly was within the power of the Legislature of Oklahoma to enact for the regulation of sales of securities, whether domestic or foreign, to the public and to provide for penalties to be inflicted upon all those making sales in violation of the enactment. It doubtless would be equally competent, if in enacting such law the Legislature had provided for the voiding of stock of its own creatures if sold in violation of said law. But no appellate court appears to have gone so far as to say that the legislative power can extend so far as to operate extraterritorially by way of declaring to be void the stock of a corporation created under the law of another sovereignty. In Mau v. Montana Pacific Oil Co. (Del.) 141 Atl. 828, it was held that stock of a foreign corporation sold in violation of a Blue Sky Law, even though the Blue Sky Law purports to declare such stock to be void, is not void. And in arriving at that conclusion, it was said:

"If one state has the power to enact laws declaring void as unlawfully issued the stock of a corporation of a sister state, lawfully issued under the law of the domicile, it is apparent that inextricable confusion is in danger of being introduced into the internal affairs of corporations. The membership in and the internal life of a state's corporate creature will be subject to as may conflicting masters as there are foreign jurisdictions. The logical result of such a doctrine is that one state has the power in effect, though not perhaps in form, to destroy the creatures of a sister sovereignty, for if it can nullify its stock for one reason it can for another. I do not think the state of California in the enactment of section 12 of its 'Blue Sky Law' meant to declare void the stock issues of any corporation other than those of its own creation, over which of course it has complete control. Though the language of the section is general and in point of form applicable to all corporations, foreign as well as domestic; yet it is hardly to be doubted but that the courts of that state would, in construing the section, restrict the application of its general language to the field of its appropriation domestic application."

In Southern Sierras Power Co. v. Railroad Com. (Cal.) 271 P. 747, it was contended that section 52 of the Public Utilities Act of the state of California, making the authorization of the Railroad Commission a prerequisite to the issuance of stock by a public utility, was applicable to foreign and domestic corporations alike. But the Supreme Court of that state, in holding against such contention, said:

"While the language employed in the section is broad and comprehensive and makes no distinction in express terms between foreign and domestic corporations, it was never intended thereby to subject foreign corporations to regulation concerning the exercise of the inherent corporate powers conferred upon them by the legislative power of the incorporating state. * * *

"While the Legislature has the power to dictate under what terms and conditions foreign corporations may transact business in this state, this power does not extend so far as to give the Legislature the power to regulate or control the intra vires acts of such corporations concerning their internal affairs. Over such matters it has no power of control. Miles v. Woodward, 115 Cal. 308-311, 46 P. 1076; Commonwealth Acceptance Corp. v. Jordan, 198 Cal. 618, 630, 246 P. 796; 8 Fletcher Cyc. of Corp. sec. 5807; Guilford v. Western Union Tel. Co., 59 Minn. 332, 61 N. W. 324, 50 Am. St. Rep. 407; Beach on Foreign Corp. sec. 307. Nor does the fact that a foreign corporation engaged in business within the state is within the jurisdiction of the state courts in suits against it upon its contracts or for fraud practiced in the operation of its business subject it to legislation purporting to regulate the exercise of its inherent powers. Application of Ostrander, 206 App. Div. 362, 201 N. Y. S. 423. For the same reason courts will refuse to exercise visitatorial powers over foreign corporations, or interfere with the management of their strictly internal affairs. Nat. Corp. v. Worth, 274 Pa. 148, 117 Atl. 914; Travis v. Knox, etc., Co., 215 N. Y. 259, 109 N. E. 250. L. R. A. 1916A, 542, Ann. Cas. 1917A, 387; Howell v. Chicago & N. W. R. Co., 51 Barb. (N. Y.) 378; In re Fryebury Water Co., 79 N. H. 123, 106 Atl. 225, 18 A. L. R. 1373. Such matters must be settled by the courts of the state creating the corporation. This rule rests upon a broader and deeper foundation than the mere want of jurisdiction in the ordinary sense of the word. It involves the extent of the authority of the state over foreign corporations. Guilford v. Western Union Tel. Co., 59 Minn. 332. 61 N. W. 324, 50 Am. St. Rep. 407."

See, also, Taylor v. Citizens Oil Co. (Ky.) 206 S. W. 644; Southwestern Portland Cement Co. v. Latta & Happer (Tex.) 193 S. W. 1115.

In some of the states having statutes declaring to the effect that the sale of every

security without a permit should be "void," the courts thereof have held that the Legislature meant "voidable" at the election of the purchaser. See Eberhard v. Pac. Southwest L. & M. Co. (Cal.) 9 P. (2d) 302; Western Oil & Refining Co. v. Venago Oil Corporation (Cal.) 24 P. (2d) 971; Chambers v. Beckwith (Mich.) 225 N. W. 605; Bishop v. Hannan Real Estate Exchange (Mich.) 255 N. W. 599; and Good v. Starker (Wis.) 257 N. W. 299. In the opinion in the case last cited it was said:

"The purpose of the statute here under consideration was to protect the purchasers of stock from having foisted upon them fraudulent and improvident issues of stock. By giving the purchasers the right to repudiate sales made contrary to the statutes, and recover payments made thereon upon timely rescission under circumstances prescribed in other provisions of the Blue Sky Law, the purpose of the statute is fully effected by construing the word 'void' as voidable. Stock sold contrary to the statute may become highly valuable. When it becomes so the purchaser should be protected in holding it as valid. Innocent purchasers of stock so sold in the first instance should be likewise protected in so holding it. The statute does not prescribe selling stock of corporations as against public policy. It does not prohibit sales of stock. It only surrounds its sale with certain safeguards."

We would say, therefore, with regard to the enactment by the Legislature of Oklahoma for sales of securities made in violation of our Blue Sky Law to be "voidable at the election of the purchaser," that such enactment accords with settled existing law, and is, in fact, merely declaratory of the existing law.

It is our opinion, therefore, and we so hold, that failure and omission of the Western Service Corporation to obtain from the State Issues Commission of Oklahoma a permit, under which it would be permitted and authorized to sell its stock in Oklahoma, did not have the effect to render null and void the certificates of stock in said corporation which plaintiff either purchased or contracted to purchase.

In her petition, following allegations made to show the connections of the various defendants in error with the Western Service Corporation, the plaintiff alleged:

"That from on or about the 8th day of May, 1930, up to or about the 15th day of January, 1932, the defendants and others herein named as conspirators for profit and gain for themselves made and entered into a permanent plan, scheme and conspiracy to, by fraud and misrepresentation, cheat and defraud the public generally and plaintiff in particular, out of money and other things of value, and without consideration passing to plaintiff or the public. To assist in carrying out and executing said plan, scheme and conspiracy, it was planned and devised by said conspirators that there should be prepared, sold and offered for sale what falsely purported to be legal, valid, financially valuable and lawful shares of stock in the Western Service Corporation, and to make the public believe that the said shares of stock were legal, valid, financially valuable and lawful shares of stock of said corporation. The intent and purpose of the conspirators was to get from the public by fraud, one and a half million dollars or more, and that the conspiracy to so defraud should extend at least from the year 1930 to 1936 and throughout the United States. Each and all of the conspirators herein named were agents and principals of and for each and all other conspirators herein named."

And in their brief counsel for the plaintiff state that it is the contention of plaintiff that the stock was sold in violation of the Blue Sky Law, and therefore null, void, and fraudulent; and that each and all of the defendants in error had something to do with influencing the plaintiff in the matter of her purchases, or with laying, preparing and executing the plan, scheme and conspiracy (alleged in the petition) by and through which plaintiff was induced to and did buy the stock. The jury, however, by its general verdicts, found otherwise. Said verdicts constituted a general finding upon all the issues presented to the jury, and were general findings in favor of the parties for whom the jury found of all the facts necessary to support the verdicts. These general verdicts were equivalent to a finding in favor of the defendants Ohern, Henry, Stacy, Janeway, Garnett, and Braniff, that they did not have anything to do with laying, preparing and executing the alleged plan, scheme and conspiracy by and through which claims she was induced to and did buy the stock. And, likewise, that plaintiff was not entitled to a recovery of damages in any amount from said named defendants. There is ample testimony in the record reasonably tending to support the general verdicts of the jury in favor of said named defendants.

Plaintiff had assigned as error the action of the trial court in overruling her motion for judgment notwithstanding the

verdicts. The answers filed in the case by the defendants appear as being sufficient to raise an issue, and there being no special findings requested, or made by the jury, we are of the opinion the motion was not warranted and that the trial court did not err in overruling same. See Maryland Casualty Co. v. Ballard, 126 Okla. 270, 259 P. 528, and cases cited therein.

Plaintiff has assigned as error the action of the trial court in giving certain instructions and refusing to give others tendered by her. The record before us shows upon its face that it does not contain all the instructions which were given by the trial court. This is not a fair presentation to this court of the instructions given below. We are thus prevented from having an opportunity to consider all the instructions together, given to the jury, with a view of determining whether the same fairly state the law on the issues joined. City of Drumright v. Ross, 148 Okla. 48, 297 P. 221; Pharoah v. Beugler, 172 Okla. 633, 45 P. (2d) 1098; see, also, Evans v. Smith, 50 Okla. 285, 150 P. 1096; Jones v. Northwest Auto Supply Co. (Mont.) 18 P. (2d) 305; Elliott v. Wheelock (Wash.) 30 P. (2d) 370; and Hayes v. Farwell (Kan. App.) 45 P. 910. Upon this state of the record we decline to consider the errors alleged to have been made by the trial court in the settlement of the instructions.

The plaintiff assigns as error the action of the trial court in sustaining the demurrer of the Chemical Bank & Trust Company to plaintiff's evidence, and also presents as against that defendant in error other allegations of error, but our view of the case makes it necessary to consider only the alleged error of the trial court in sustaining the demurrer.

In acting upon said demurrer the trial court had before it the following undisputed facts: That the Western Service Corporation, on or about July 2, 1930, appointed a transfer agent and a registrar; that the Marine Midland Trust Company of New York was appointed transfer agent, and the Chemical Bank & Trust Company, of New York, was appointed registrar; and the appointments were duly accepted by said appointees; that under the terms of the appointment of the Chemical Bank & Trust Company as registrar it became its duty to register any certificate of stock in the Western Service Corporation, on original issue, when countersigned and presented by the transfer agent, provided the number of shares represented by such certificate, together with the number of shares carried by all certificates previously registered and outstanding, did not exceed the total number of that class of Western Service Corporation was authorized to issue; that this was the purpose in having a registrar and constituted the sole function of such registrar; that the Chemical Bank & Trust Company had nothing whatever to do with the formation of the Western Service Corporation, the preparation of its articles of incorporation, formation of its by-laws, the determination of the classes of its stock or the form of the certificates; that it had no subsequent information about those matters except as disclosed by the papers transmitted to it with the resolution of the Western Service Corporation appointing it as registrar; that the Chemical Bank & Trust Company had nothing whatever to do with or any knowledge of any contract entered into prior to its appointment as registrar, or the one entered into with Earl R. Ernsberger & Company, Inc., subsequent thereto, for the sale of stock in the Western Service Corporation; that the Chemical Bank & Trust Company had no knowledge, and it was not its duty under the terms of its appointment as registrar to ascertain, where or the means by which subscriptions for stock in the Western Service Corporation were obtained; that in the performance of its duty as registrar it was neither necessary nor required for it to know the name of the stockholder; that all it was required to know and register was the class of stock, the serial number of the certificate, and the number of shares; that it obtained and could obtain no other knowledge of any of the stock sale transactions from anything brought to its attention than appeared upon the face of the certificates; that it properly performed the duty for which it had been appointed, and no other; that it had no knowledge, actual or implied, of any plans for the sale of stock in the Western Service Corporation, either in the east or in Oklahoma, or of any sales of such stock, or of where, to whom, by whom, or for what consideration, any such were made; that it had no knowledge of the amount of commission paid or to be paid for selling the stock, or any fact that rendered the stock a speculative security, as defined in the Oklahoma Blue Sky Law; that it had no interest, direct or indirect, in any such sales.

With regard to the manner in which the stock was registered by the registrar, it was shown by the evidence that the Western Service Corporation upon receiving a

subscription for its stock would communicate that information to its transfer agent in New York, the Marine Midland Trust Company, 'and order that the transfer agent prepare and countersign a certificate of stock therefor; that the transfer agent had in its possession stock certificates which had been signed in blank by the proper authorized officers of the Western Service, and upon receipt of the order, or requisition, the transfer agent would fill in one of said certificates with the name of the purchaser and the number of shares stated in the order, and then countersign said certificate; that said transfer agent would then, usually by messenger, send the certificate to the registrar, with an attached memorandum stating the number of shares previously issued and outstanding, the number of shares represented by that certificate, and the total number of shares that would then be registered and outstanding, including that certificate; that then the registrar, if its figures coincided with those in the memorandum, and if the stock represented by the certificate was within the total authorized stock, listed the number of shares in its control ledger, added them to the total previously issued, signed its name on the certificate under the words "Registered," and returned the certificate to the transfer agent; and, that this completed the transaction, so far as the registrar was concerned.

The registration of plaintiff's certificates by this defendant, manifestly implied nothing more than that her certificates, and the shares represented by them, were within the amount of an authorized issue and did not constitute over issues. The action of said defendant in "registering" plaintiff's certificates was neither unwarranted nor unlawful in any respect, and did not operate to perpetrate fraud upon the plaintiff. There was no evidence before the trial court to establish as a fact, or from which the inferences could be drawn, that this defendant had any knowledge of, was a party to, or in any manner participated in the conspiracy alleged in plaintiff's petition. There was, in short, a total absence of proof on the part of plaintiff to fix or establish liability of the defendant to respond to her in damages. We hold, therefore, that the trial court did not err in sustaining the demurrer of the Chemical Bank & Trust Company to plaintiff's evidence.

The record before us discloses that on May 14, 1934, the trial court sustained the separate demurrer of the defendant Albert C. Hunt to the first five causes of action set forth in the plaintiff's petition and overruled same as to the remaining three causes of action. It does not appear that the plaintiff thereafter elected to plead over said five causes of action, but, presumably, elected to just stand upon same as she had theretofore pleaded them. She had assigned as error the action of the trial court in sustaining the demurrer as to her first five causes of action. But she did not, however, appeal from said action within six months from the date the demurrer was thus sustained, nor did she incorporate as error the sustaining of said demurrer in her motion for new trial. And we hold, therefore, that she has waived this question. Aultman & Taylor Machinery Co. v. Fuss, 86 Okla. 168, 207 P. 308; Howard v. Berryman, 143 Okla. 258, 288 P. 605; Empire Gas & Fuel Co. v. Powell, 150 Okla. 39, 300 P. 788.

The trial court having sustained the demurrer of the defendant Hunt as to plaintiff's first five causes of action, said defendant thereafter answered as against the plaintiff's three remaining causes. At the trial, at the conclusion of plaintiff's evidence, the defendant Hunt interposed his demurrer thereto, and same was sustained. The plaintiff assigns as error the sustaining of said demurrer, but she has not set out in her brief an abstract or abridgment of the evidence upon which she bases her claim that the trial court erred by sustaining said demurrer; and it is not the duty of this court to search the record to find any such evidence. Therefore, we decline to consider said assignment. Kaskaskia Live Stock Ins. Co. v. Harvey Bros., 93 Okla. 107, 219 P. 672.

The judgments of the trial court are affirmed.

OSBORN, C. J., and BUSBY, WELCH, CORN, GIBSON, and HURST, JJ., concur. PHELPS, J., absent. RILEY, J., not participating.