[Civ. No. 6378.   Third Appellate District.—June 10, 1940.]

OMER L. SHARP et al., Respondents, v. BIG JIM MINES (a Corporation) et al., Appellants.

436

Emmett A. Tompkins for Appellants.

Laurence W. Beilenson, Paul E. Iverson and Loeb, Walker & Loeb for Respondents.

TUTTLE, J.—This action was brought to enjoin the levy of an assessment upon corporate stock of defendant corporation. The trial court found for plaintiffs upon all issues, and judgment was entered enjoining the levy of such assessment. Defendants' appeal is from the judgment, and is based upon the judgment roll alone.

The findings disclose that plaintiffs are all stockholders in defendant corporation. Defendant Black is president of said company, and defendant Oaks is its secretary. Defendants Oaks, Black and Gordon are directors. All of said defendants are residents of the State of California. Said corporation was organized under the laws of Arizona, to do business in California. Its principal place of business is Los Angeles, California, where all of its books and records are kept. For

years last past all the business of said company has been conducted in California, where it is interested in two mining properties.

It is further found that a purported meeting of the stockholders of said company was held on September 16, 1936, at which they purported to amend article V of the by-laws to allow the levying of a sixth assessment, and instructed the directors of said corporation to levy an assessment of one-half cent per share on each share of stock outstanding; that plaintiffs received notice of said assessment of their shares of stock, in which it was stated that unless said assessment was paid before October 30, 1936, a penalty of one-half a cent a share would be imposed, and that unless said assessment was paid before November 30, 1936, their stock would be sold to satisfy said assessment; that at the time of said meeting there were 3,940,000 shares of said corporation issued and outstanding; that 1,139,996 shares were represented in person or by proxy, or 28.8 per cent of the total outstanding and issued capital stock; that on the date of said meeting, 877,627 shares of said stock were illegally issued and outstanding, and held by some seventeen stockholders whose names are set forth. Of the latter amount defendant Keating owned 538,185 shares; that the by-laws of said corporation provide that a majority of the outstanding and issued stock is necessary for a quorum at any stockholders' meeting; that there was no quorum of stockholders at said meeting, and any action taken thereat was void and of no effect; that the said 877,627 shares are illegal, for the reason that no permission to issue the same was ever procured from the Arizona corporation commissioner, and that of said illegal shares 793,127 were represented at said meeting, and that a vote to levy such purported assessment would not have carried without the vote of said illegal shares.

The judgment enjoins defendants from collecting said assessment and selling any stock for failure to pay the same; it also enjoins defendants from levying any *further assessment* on the stock of said corporation until, (A) A full financial statement is sent to the stockholders; (B) A report of a mining engineer, appointed by plaintiffs, is sent to the stockholders; (C) All stock illegally issued is canceled; said stock being specified with the names of some eighteen stockholders and number of shares held by each, only one of them being

joined in this action; (D) The defendant files a copy of its articles of incorporation with the secretary of state of the State of California; (E) Article V, section 9 of the by-laws is amended. The judgment further restrains the corporation from levying a further assessment for the development of Calaska mine, or for the purpose of paying the Security-First National Bank anything on account of a promissory note executed by defendant Keating.

■ The chief contention made by appellants is that the court had no power or jurisdiction to entertain the action or render the judgment. They rely upon the general rule as expressed in 17 Fletcher's Cyclopaedia of Corporations, section 8425:

"Otherwise stated, it is the rule that the courts of one State will not exercise the power of deciding controversies relating merely to the internal management of the affairs of a Corporation organized under the laws of another State, or of determining rights dependent upon such management, but will leave questions relating to the management of the internal affairs of a foreign Corporation to be settled by the tribunals of the State which created the Corporation."

As supporting this rule, and indicating the views of California courts they cite the case of *Southern Sierras P. Co.* v. *Railroad Com.*, 205 Cal. 479–483 [271 Pac. 747], where reference is made to the management of the internal affairs of a foreign corporation in the following language:

"Such matters must be settled by the courts of the State creating the corporation. This rule rests upon a broader and deeper foundation than the mere want of jurisdiction in the ordinary sense of that word. It involves the extent of the authority of the state over foreign corporations. (*Guilford* v. *Western Union Tel. Co.*, 59 Minn. 332 [50 Am. St. Rep. 407, 61 N. W. 324].)"

■ It must be conceded that the levying of an assessment is strictly and inherently an internal affair of the corporation. (17 Fletcher's Cyc. of Corp., sec. 8437.)

■ Conceding the general rule to be as stated above, respondents contend that the facts of this case bring it within an exception to such rule which is stated in Thompson on Corporations, third edition, volume 8, page 963:

"The general rule that local courts will not interfere or control the management or the internal affairs of a corpora-

tion, is not without exception. But courts will interfere and control the management and internal affairs of a foreign corporation when it acquires jurisdiction over a foreign corporation, where such jurisdiction is complete and the court is able not only to hear and determine, but to enforce its decree in such a manner as to do complete justice to the parties. Thus, to this particular point the Louisiana court said that, 'the courts of a state will not ordinarily entertain suits involving the exercise of visitorial power over foreign corporations, nor will they, ordinarily, undertake to regulate the internal management of such corporations, but this rule is subject to the same exceptions as the necessity upon which it is founded, and where in a particular case, a court acquired complete jurisdiction, and is able not only to hear and determine, but to enforce the determination in such a manner as to do complete justice, the jurisdiction will be exercised, although the result may be the regulation of the internal affairs of a foreign corporation'.''

This exception is also noted in Fletcher's Cyclopaedia of Corporations, volume 17, section 8427:

''However, the courts generally recognize that controversies may involve some consideration of, or interference with, the internal affairs or management of a foreign corporation without calling for an exercise of visitorial powers over the corporation, and the present tendencies of the courts seems to be towards a greater readiness to recognize exceptions to the general rule of noninterference, especially where the corporation is foreign in a technical sense only. As said in a recent case (*Scholl* v. *Allen*, 237 Ky. 716 [36 S.W.(2d) 353]), 'the vague principle that courts will not interfere with the internal affairs of a corporation whose foreignness is at best a metaphysical concept must fall before the practical necessities of the modern business world'. In such cases the courts are inclined, in considering the questions of public policy and expediency to determine whether or not jurisdiction should be exercised, to look to the real, practical status of the corporation rather than its technical or mere nominal foreignness. Convenience, expediency and justice are to be determined, in part at least, by the location of the books, records, assets and the principal offices of the corporation, the place of residence of the directors and officers, and the place where its business is transacted. Inexpediency, on the other hand,

may be based upon comity, legal restrictions, lack of equity on the part of the complainant or lack of power in the court to render or enforce an equitable decree for want of jurisdiction of property or parties, and unless some such basis is apparent, the court should not decline to exercise jurisdiction which it admittedly has.''

In 12 Ruling Case Law, page 33, section 22, the qualification of the general rule is thus expressed:

''Irrespective of the question as to the proper test to be applied in determining what are the internal affairs of a corporation, the view has been expressed by some courts that in the case of corporations which are nonresident only in that they were created in another state—the officers, agents, stockholders, business, and property all being within the jurisdiction of the court—they will not deny relief in a proper case on the ground that the 'internal affairs' of the corporation will be affected.''

This exception is recognized in the case of *Wait* v. *Kern River Min. etc. Co.*, 157 Cal. 16 [106 Pac. 98, 100]. There, the corporation was organized in the State of Arizona, but all of its property was situate, and all of its business was carried on in California, and it had its office in the city of Los Angeles. We quote from the opinion:

''Defendant corporation was, as we have seen, organized under the laws of Arizona. But for all practical purposes, according to the record, it is a California corporation. Its contemplated business was all to be transacted in this State, all of its property is here, and it does business nowhere else. As was said by Judge Lurton of another corporation in *Young* v. *South Tredeger Co.*, 85 Tenn. 189 (4 Am. St. Rep. 752, 2 S. W. 202), 'its whole tangible and ponderable substance is in this state'. It is a foreign corporation only in the sense that it is created in another state and continues to enjoy corporate life by permission of that state. In every other sense, it is solely a California corporation. So far as it in fact does or can do business at all, it does it solely by permission of this state, and within it borders. Under such circumstances its residence in Arizona, or anywhere else outside of California, is the merest fiction. As to such a corporation, so organized and situated in regard to all its business and property, we can see no good reason why, as was said in the case last cited, 'the fiction as to the situs of the corporation

entity ought not to yield in the interest of justice to the actual facts,' to an extent sufficient to warrant the holding that the corporation is sufficiently a resident of this state to bring it within the rule applicable to domestic corporations as to the situs of its stock'."

In *Stabler* v. *El Dora Oil Co.*, 27 Cal. App. 516 [150 Pac. 643], mandate was invoked for the purpose of compelling the board of directors of defendant corporation to call a meeting of its board of directors. The corporation contended that the courts of California had no right or power to interfere with its internal affairs, since it was incorporated under the laws of Arizona. The court pointed out that all the business of the corporation was transacted in California; all its property was situated there; all the directors resided in this state, and their meeting was held there. The decision quotes the same language from the Wait case which appears above herein, and holds that the California court had the right and power to proceed, since with all the parties before it, complete jurisdiction was acquired. We therefore believe that it may safely be said that when a corporation is non-resident only in that it is the creation of another state—its officers, agents, books, place of business, business, and all its property being within the jurisdiction of the court—policy and expediency do not require the court to deny relief in a proper case on the ground that the internal affairs of the corporation will be affected.

The authorities relied upon by appellants, with one exception, involve facts which indicate an inability or want of power in the courts to enforce or effectuate their orders or decrees. In other words, the record fails to show complete jurisdiction which requires that the officers, board of directors, and the records of the corporation be present within the state whose courts have proceeded to adjudicate the questions presented. The only case which appears to make no exception whatever to the general rule is that of *Thompson* v. *Southern Connellsville Coke Co.*, 269 Pa. 500 [112 Atl. 533]. There, apparently, the state courts exercise no jurisdiction whatever in respect to *any* action involving the internal affairs of a foreign corporation. We regard the holding as opposed to the weight of authority, both in our own and other states.

■ The demurrer to the complaint was properly overruled, for the reasons given above. The complaint does not show lack of jurisdiction.

■ It is contended by appellants that the portion of the judgment granting an injunction against the levying of future assessments, except upon certain conditions, was in excess of the jurisdiction of the court, and void, as it involved issues not within the pleadings. (*Baar* v. *Smith,* 201 Cal. 87 [255 Pac. 827].) We are in accord with that view. The allegations of the complaint are directed to the invalidity of the stockholders' meeting of September 16, 1936, when it is alleged the stock of plaintiffs was assessed. The prayer of the complaint reads as follows:

''Wherefore, plaintiffs pray that defendants and all of them be enjoined from levying *said assessment,* imposing said penalty, making sale of said shares or any of them, or taking any step or steps in connection therewith; that such injunction issue (a) for all purposes, (b) pending the completion of an audit and investigation of the affairs of the corporation, and until a reasonable time thereafter, (c) until it be determined what shares of the corporation are legally issued; for a temporary injunction and temporary restraining order to the same effects *pendente lite;* for costs of suit, and for general relief.'' (Italics ours.)

We find nothing in the pleadings which would justify the court in enjoining defendant corporation from holding, levying, and collecting any *further* assessments.

■ It is true that the court *finds* that 877,627 shares of stock were illegally issued, but the fact that such stock is outstanding cannot be made the basis of an injunction against the levy of any further assessments by the *corporation,* under the pleadings before us. The *stockholders* might be enjoined from voting such stock if they were before the court. Only one stockholder, A. G. Keating, who owned 583,185 shares, was made a party to the action, and he was not enjoined from the performance of any act arising from his ownership. The injunction is directed solely against *corporate* acts. The sole question presented by the pleadings here was the validity of the meeting of September 16, 1936. The court found that such meeting was not legal, and properly enjoined any further proceedings in connection with the purported levy of the assessment. That portion of the judgment which enjoined

the levy of any further assessments, except upon the performance of certain conditions, exceeded the issues, and was therefore *coram non judice* and void. It will be noted that the conditions in the judgment mentioned above are not attached to the injunction relative to the stockholders' meeting in question, but to the injunction against *any* future levy. As the injunction against any future levies must fall, the conditions fall with it.

█ The same contention is made by appellants in respect to the injunction against the levy of an assessment to work the Calaska mine, and to pay a promissory note executed by defendant Keating. We find that the issues with reference to the ownership of the mine by defendant corporation, and the question as to whether or not the note was a charge against the corporation, were presented and litigated. The findings were that the corporation had no title to the mine, and that the corporation received no consideration for the note executed by defendant Keating while he was its general manager. The contention is without merit.

The judgment is modified to read as follows:

"That the defendants Big Jim Mines, Inc., A. G. Keating, W. B. Oaks, C. S. Black, and F. V. Gordan (O. K. L. P. G.), and each of them, are hereby enjoined from collecting the assessment on the stock of the Big Jim Mines, Inc., noticed to be due and payable on or before October 30, 1936, and are hereby enjoined from levying or collecting any penalty for failure to pay the same, and are hereby enjoined from selling any stock at public auction for failure to pay said assessment. That the defendants, and each of them, are hereby enjoined from levying any assessment upon the stock of said Big Jim Mines, Inc., for the purpose of developing the Oak Mesa Mine property, also known as Calaska Mine, and are hereby enjoined from levying any assessment on the stock of said Big Jim Mines, Inc., for the purpose of paying the Security-First National Bank of Los Angeles anything on account of the promissory note executed by A. G. Keating."

As so modified, the judgment is affirmed.

Appellants will recover their costs on appeal.

Pullen, P. J., and Thompson, J., concurred.