Filed 4/8/21  A&B Market Plus, Inc. v. Arabo CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| A&B MARKET PLUS, INC., et al., | D073850 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No. 37-2015-00032389-CU-OE-CTL) |
| MARK ARABO, | ORDER MODIFYING OPINION AND DENYING REHEARING |
| Defendant and Appellant. | NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on March 25, 2021, be modified as follows:

The last paragraph starting on page 25 of the opinion and ending on page 26 is deleted.  Footnote 17 within this paragraph is also deleted.  The following paragraph is inserted:

"In this matter, the motion in limine was wholly insufficient to preserve a hearsay objection to the exhibits for appeal.  The motion sought to exclude irrelevant evidence and evidence not relevant to the transactions contained in the operative complaint.  The motion was not directed to a particular identifiable body of evidence that would have allowed the trial court to determine the evidentiary question in the

same context as it was presented at trial.  (Morris, *supra*, 53 Cal.3d at p. 190.)  Nor did the motion raise a hearsay objection.  (*Ibid*.)  Accordingly, the in limine motion failed to preserve a hearsay objection to the exhibits for appellate review."

On page 27 of the opinion, first full paragraph, at the end of the second sentence the following citation is deleted:  "(Rule 8.204(a)(1)(B).)"  The following citation is inserted:  "(Cal. Rules of Court, rule 8.204(a)(1)(B).)"  Immediately after this citation, footnote 17 is inserted, reading as follows: "Undesignated rule references are to the California Rules of Court."

There is no change in judgment.

The petition for rehearing is denied.


BENKE, Acting P. J.

Copies to:  All parties

2

Filed 3/25/21  A&B Market Plus, Inc. v. Arabo CA4/1 (unmodified opinion)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| A&B MARKET PLUS, INC., et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> MARK ARABO, <br><br> Defendant and Appellant. | D073850 <br><br><br> (Super. Ct. No. 37-2015-00032389-CU-OE-CTL) |

APPEALS from a judgment and orders of the Superior Court of San Diego County, Richard E. L. Strauss, Judge.  Affirmed.  Motions for sanctions denied.

Niddrie Addams Fuller Singh, David A. Niddrie and Victoria E. Fuller for Defendant and Appellant.

LiMandri & Jonna, Charles S. LiMandri, Paul M. Jonna, Jeffrey M. Trissell and B. Dean Wilson for Plaintiffs and Respondents.

This is a derivative action filed by A&B Market Plus, Inc., LS & SLG, Inc., Wall First Venture, Inc. and OB Star, Inc. (collectively, plaintiffs), as members or former members of the Neighborhood Market

Association (NMA) against NMA[1] and NMA's former President and CEO Mark Arabo, and NMA's treasurer and secretary, Amir Oram. Plaintiffs sought to remove Arabo and Oram from NMA's board of directors (the board), disgorgement of at least $463,322.63 obtained through Arabo's alleged misdeeds, and other damages for tax evasion and lost business opportunities.

The sole matter at issue in this appeal is a $210,000 bonus (the bonus) that the board awarded Arabo for his work in facilitating the sale of NMA's building. After a bench trial, the court ordered Arabo to return the bonus.[2]

Arabo appeals, claiming that plaintiffs' addition of a new fraud-based theory of liability before trial, but after the close of discovery, violated his due process rights. He also asserts that the trial court erred in admitting documents prepared by plaintiffs' counsel for litigation. As we shall explain, Arabo did not suffer a due process violation and Arabo forfeited the alleged error regarding admission of the challenged documents.[3] We also deny the parties' cross motions for

---

[1] In a derivative action the corporation is an indispensable party and must be joined as a nominal defendant because its rights are being litigated. (*Keeler v. Schulte* (1957) 47 Cal.2d 801, 803.) Accordingly, plaintiffs named NMA as a defendant to all causes of action and we occasionally refer to NMA as a defendant.

[2] The court entered a defense judgment for Oram.

[3] Should we agree that the trial court improperly ordered him to return the bonus, Arabo argues that no alternative grounds support affirmance of the court's judgment regarding the bonus. Our conclusion that the trial court did not err when it ordered Arabo to return the bonus moots this argument and we do not address it.

sanctions, and plaintiffs' request for attorney's fees under the private attorney general statute.[4]  (Code Civ. Proc., § 1021.5.)

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

*Overview of the Litigation*

NMA is a non-profit mutual benefit corporation that is a trade association for independent retail convenience stores.  Arabo worked as NMA's President and CEO under a written employment contract.  This derivative action arose after NMA did not allow plaintiffs to inspect its records and failed to provide plaintiffs with the NMA membership list.

As summarized by plaintiffs' trial brief, the first two causes of action for breach of fiduciary duty and "illegal compensation" were derivative claims that focused on purported misconduct that occurred

---

[4]     Arabo seeks to augment the record to include certain portions of the videotaped deposition testimony of two witnesses played during trial.  Respondents admit that the video clips were played at trial, but submit that the motion should be denied because Arabo provided no explanation for his delay in bringing this motion.  Arabo responds that the augmentation is relevant to issues raised in respondents' brief and sanctions motion.  Arabo cites the interruption of normal operations occasioned by the pandemic as contributing to the delay.

"At any time, on motion of a party . . ., the reviewing court may order the record augmented to include:  [¶] . . . [a]ny document filed or lodged in the case in superior court."  (Cal. Rules of Court, rule 8.155(a)(1)(A).)  Augmentation requests "made after a reasonable time has expired from receiving the [appellate] record . . . will be denied absent a strong showing of unusual or unavoidable circumstances giving rise to the delay."  (*People v. Preslie* (1977) 70 Cal.App.3d 486, 492.)  Respondents filed their sanctions motion in early February 2020. and Arabo filed his augmentation motion in early June 2020.  We believe that the global pandemic declared in March 2020 created unusual circumstances excusing any delay in filing the motion.  The motion is granted.

between 2013 and 2014, when NMA lost over $1,600,000.[5]  These claims addressed, among other things, "Defendants':  gross overpayments to Mark Arabo; tax violations and false tax reporting; misappropriation of funds from the NMA Education Foundation, a related charity; failure to disclose serious conflicts of interest; improper political contributions and lobbying expenses; use of NMA funds for personal use (while coding them as business expenses); falsely representing that the NMA's books were audited; and transferring control of the NMA to an outside organization – in violation of the bylaws, and pursuant to an unlawful contract."  The complaint also contained two causes of action for injunctive relief to address defendants' failure to allow inspection of NMA records, and attempted retaliation against a NMA member.

After trial, the court issued a 40-page statement of decision which concluded, among other things, that a new board needed to be elected and a receiver appointed pending election of the new board.  The trial court also concluded that Arabo breached his fiduciary duty and required him to return the bonus to NMA.

As we have stated, this appeal focuses exclusively on Arabo's right to the bonus.  Accordingly, the balance of our discussion focuses on the facts relevant to the bonus claim.

*Facts Relevant to the Bonus Claim*

In late 2013, NMA was having financial problems and the board later decided to sell its only asset, an office building located on Friars Road (the building).  The board hired Mike Habib as its broker for the

---

[5]    The parties agreed that these two causes of action would be merged at trial based on the overlap between the claims.

4

transaction. Keller Williams SD Central Coastal (Keller Williams), is a commercial real estate agency and, in 2013, was a tenant in NMA's building. A broker from Keller Williams, licensed California attorney Toni-Diane Donnet, saw the for sale sign and approached Habib with an offer to purchase the building for $2.6 million.

Habib showed Donnet a competing offer for $3.32 million. Keller Williams matched the competing offer and purchased the building for $3.32 million. Habib created a letter dated September 22, 2014 (the letter), congratulating Arabo on the sale. The letter stated:

"Dear Mark,

"I wanted to congratulate you and thank you again for your efforts in successfully negotiating and closing the sale of The NMA building. The transaction was complex and problematic, but the way you held it all together was BRILLIANT!

"We started out with an offer from your tenant, Keller Williams, at $2,600,000. I remember what you told me they said they were going to offer $2,100,000 and you were right! Then you went back and forth with them, tirelessly, until the written offer finally came in at $2,600,000. It still amazes me how you worked them up from $2,600,000 to $3,320,000! Amazing!

"Your idea to the Buyer of buying all three buildings is what clinched the deal. You had nerves of steel when it came to the hard negotiating of the key points of the deal. The payoff was evident in the fact that the Buyer closed escrow and paid a higher price to you for your building than what they paid for either of the two adjacent buildings, purchased concurrently with your building. I respect you and admire how you saw the big picture.

5

"The real work was closing the deal, not just in negotiating the initial terms of the offer. After you signed the deal, for over six months, the Buyer kept coming back relentlessly trying to hit you up with changes that they needed and had to have in order to close the deal. You held firm and the only changes that were made, benefitted The NMA!

"I am grateful for the way you led and how you skillfully made strategic decisions at key moments in the transaction. Mark, I still can't figure out how you managed to do what you did with this deal, in the midst of becoming the one to stand up and courageously create solutions for Iraqi Christians in a way that makes Americans proud. My hat is off to you and here's wishing you all my best as you continue your good work.

"With respect and grateful appreciation,

"Mike Habib, CClM
"Coldwell Banker Commercial"

After the sale closed, the board discussed giving Arabo a bonus. The letter was presented at the board meeting and the minutes reflect the directors' belief that Arabo "worked for months and hundreds of hours to persuade the [buyer] to pay $3.32 million." The board voted to give Arabo a $210,000 bonus.

*The Complaint and Pre-Trial Proceedings Regarding the Bonus*

In September 2015, plaintiffs filed this shareholder derivative suit against NMA that included direct claims against Arabo. The first cause of action alleged that Arabo breached his fiduciary duty to NMA by improperly authorizing or approving certain expenses, including (1) a " 'finder's fee' " of $210,000 paid to Arabo even though Arabo was not a broker on the transaction or otherwise entitled to this

compensation, and (2) approximately $38,000 in reimbursement for travel and costs not associated with NMA business. The second cause of action, entitled as a claim for "illegal compensation", contains similar allegations. Plaintiffs' first amended complaint and the operative second amended complaint, repeated these allegations.[6]

In late August 2017, plaintiffs' counsel had a telephone conversation with Habib. In early September 2017, three of plaintiffs' other counsel, including Bryan Wilson, participated in a conference call with Habib. Wilson took contemporaneous notes during the call, which he e-mailed to the two other attorneys on the call. The notes indicated that Arabo made no decisions about the sale and that Habib did not give much credit to Arabo for the sale. That same day, one of plaintiffs' attorneys e-mailed Habib a draft declaration based on Wilson's notes. Later that same day, Habib returned a printed and marked-up copy of the declaration.

On September 19, 2017, and a mere three weeks before trial, one of plaintiffs' attorneys wrote the following memo to the file:

> "I spoke today to Mike Habib. He confirmed that he will be able to fully testify as to everything he told us on the phone (and which is summarized in the attached declaration). He is concerned about putting it in writing because he believes the folks on the other side are nasty and will do everything they can to attack him. He encouraged us to 'ask the right questions' at trial so that we can elicit his full and complete testimony. He will probably send us a watered down version of his declaration tomorrow (which will still be accurate), but he will answer more fully at trial."

---

[6] Although the trial court ordered Arabo to return the $38,000, he does not challenge this part of the court's decision.

7

The following day, Habib returned the proposed declaration to plaintiffs' counsel with certain language stricken.  The language not stricken by Habib stated:  "I am not a party to this case.  I have personal knowledge of the matters set forth below and could and would competently testify thereto if called upon to do so in court"; "I was the commercial Real Estate agent for the Neighborhood Market Association ("NMA") in 2014 when it sold its property located at 7050 Friars Road, San Diego, California 92108"; "I understand that Mr. Arabo contends he spent hundreds of hours working on this transaction"; "I advertised the property and developed the relationship with the buyer's agent, and negotiated the price"; "I did communicate with Mr. Arabo near to the time the sale was completed to discuss my commission from the sale"; and "following the sale, Mr. Arabo asked me to write a letter of recommendation to him that he wanted to share with the NMA Board.  He did not tell me the purpose of the letter, but I gladly agreed to write one, as I would for any other client."

In late 2017, the parties filed their trial briefs.  Plaintiffs argued that they were not limited to the two breaches of fiduciary duty identified in the complaint (the $210,000 bonus and $38,000 in expenses), and were seeking an additional $215,000 in damages for Arabo's alleged wrongdoing.

According to plaintiffs, they could seek leave to amend their complaint to conform to proof at trial.  Arabo's trial brief complained that plaintiffs were requesting the court to "decide a host of newly asserted claims that were never alleged" in plaintiffs' complaints.

*Trial Testimony Regarding the Bonus*

Donnet worked exclusively with Habib in closing the sale and she had no interaction with Arabo. Donnet testified that the statements in Habib's letter regarding Arabo's purported role in the sale were false.

Habib, who the parties did not depose, testified that he dealt primarily with Donnet regarding the sale of the building, but that he had contact with Arabo and was able to reach him as needed. He admitted that Arabo asked him to write a letter of recommendation for an unknown purpose and stated that he "gladly" did so. Habib claimed that Arabo did not tell him what to write.

At one point, plaintiffs' counsel refreshed Habib's recollection with Habib's September 1, 2017 e-mail regarding the proposed declaration that counsel had prepared for Habib's signature. After the court overruled Arabo's leading and lack of foundation objections, Habib denied telling plaintiffs' counsel that Arabo told him what to put in his letter " 'word-for-word.' " Plaintiffs then called attorney Wilson as a rebuttal witness to testify regarding prior inconsistent statements Habib made during Habib's telephone conversations with plaintiffs' counsel.

Later, Arabo's counsel sought to recall Habib because Habib had given him "a different story." He explained that when plaintiffs called Habib to testify, he anticipated that Habib would *retract* the letter, but this did not occur. Instead, Habib affirmed the truth of the letter. Arabo's counsel explained that he needed to recall Habib to rebut Wilson's testimony. Plaintiffs' counsel responded that if Habib was recalled, he would call multiple attorneys who participated in the telephone calls with Habib to impeach Habib. The court indicated that

9

if Habib was recalled, then it wanted to hear further testimony from Donnet.

When recalled, Habib testified that everything in his letter was "100 percent true." He claimed that Arabo did not provide even a single word of the letter. After his conversation with plaintiffs' counsel, Habib stated that he did not sign the proposed declaration because he was "unwilling to sign something that wasn't accurate." Habib found Wilson's notes in relation to the telephone conversations "humorous" because the notes bore no relation to the conversations, stating "It's what that person -- whoever wrote that, . . . Wilson, it's what he wanted to believe." Habib claimed that the declaration prepared for his signature by plaintiffs' counsel did not bear any relation to the truth or what had been discussed. The parties stipulated that each of plaintiffs' attorneys would testify consistent with Wilson.

Plaintiffs recalled Donnet. Donnet testified she and Habib spoke in the hallway on the day they both initially testified, and Habib explained to her that Arabo had dictated the letter to him. She testified that the statements in Habib's letter regarding Arabo's involvement in the transaction were false. Arabo then had Habib testify a third time. Habib essentially claimed that Donnet was lying because Arabo told him "not one word" to put in the letter.

Plaintiffs' expert witness opined that Arabo breached his fiduciary duty by misrepresenting his involvement in the sale of the building to the board. The defense expert testified that as a NMA officer, Arabo owed a fiduciary duty to NMA. If Arabo knew that Habib's letter was false, then Arabo was obligated to disclose this to the board.

10

During cross-examination, the defense expert agreed that corporate officers have a duty of care to accurately convey information to the board of directors that could impact the officer's entitlement to compensation. Assuming the information in Habib's letter was false and that Arabo had "spoon-fed" the false information to Habib, the defense expert opined that Arabo breached his fiduciary duty to NMA, specifically "the duty of loyalty and the duty of candor and the duty of full disclosure."

*Closing Arguments and Decision Regarding the Bonus*

During closing argument, plaintiffs' counsel argued that Habib's letter was a lie and that Donnet's testimony was truthful. Arabo's counsel claimed that plaintiffs wanted to make Arabo's entitlement to the bonus "all about" Habib's letter, arguing that the board had multiple reasons to grant Arabo a bonus. Arabo's counsel pointed out that what Habib told plaintiffs' counsel during the telephone calls was not under penalty of perjury and that Habib consistently testified regarding the truth of the letter under penalty of perjury.

The court gave its tentative decision immediately after closing argument. The court prefaced its decision by stating, "This is one of the most unusual cases I've had in my 22 years on the bench. I've never heard so much fiction under oath. It's really unbelievable. I don't even know where to start." The court stated it did not believe Habib's testimony, and believed Donnet's. The court found that the letter was "the driving force" for the bonus, the letter amounted to a false representation to the board, and that Arabo participated in the false representation. Accordingly, the court ruled that Arabo must disgorge the bonus.

11

Over Arabo's objection, the trial court adopted plaintiffs' proposed statement of decision.  The trial court entered judgment in favor of plaintiffs.

*Post-Trial Proceedings Regarding the Bonus*

Arabo filed a motion for new trial on multiple grounds, including surprise and irregularity in the proceedings.  Among other things, Arabo asserted he was "prevented from having a fair decision" because plaintiffs never pled their misrepresentation theory.  Arabo explained that had he known plaintiffs' theory of liability, he would have deposed Habib, and he would have called board members as additional witnesses to testify that they did not rely on Habib's letter when voting to approve the bonus.  Arabo also asserted that a new trial was necessary because plaintiffs concealed that they paid Donnet in connection with her testimony.  Since Donnet's credibility was a key factor in the court's ultimate decision, Arabo argued that plaintiffs' failure to disclose the payment resulted in extreme prejudice.  The trial court denied the motion, stating that Arabo failed to establish any of the statutory grounds for a new trial.

## II.

## DISCUSSION

### A.    *Arabo Suffered No Due Process Violation.*

" 'In a contested proceeding, no court may render judgment without conforming to the constitutional guarantees which afford due process of law.  [Citation.]  Due process requires that all parties be notified of the facts and issues in dispute, that each party be afforded a fair opportunity to present evidence in open court, and that judgment be rendered based on an evaluation of the evidence on each side,

12

findings of fact and conclusions of law.' " (*Carr v. Kamins* (2007) 151 Cal.App.4th 929, 936.) We independently consider whether the proceedings below complied with the constitutional guarantee of procedural due process. (*Conservatorship of Christopher A.* (2006) 139 Cal.App.4th 604, 609-610.)

One of Arabo's overarching contentions is that the operative complaint failed to plead a breach of fiduciary duty cause of action based in fraud with specificity.

"[C]orporate officers and directors have fiduciary duties of due care and loyalty to the corporation and its shareholders. . . ." (Friedman et al., Cal. Practice Guide: Corporations (The Rutter Group 2020) ¶ 2:19.1, p. 2-5, italics deleted.) "[B]reach of fiduciary duty can be based upon either negligence or fraud, depending on the circumstances." (*Tribeca Companies, LLC v. First American Title Ins. Co.* (2015) 239 Cal.App.4th 1088, 1114.) "[T]here is no clear line establishing when a fiduciary's breach of the duty of care will be merely negligent and when it may be characterized as constructive fraud." (*Salahutdin v. Valley of California, Inc.* (1994) 24 Cal.App.4th 555, 563.) Breach of a fiduciary duty usually constitutes constructive fraud. (*Ibid.*)

Arabo's misrepresentations could have exposed him to liability for constructive fraud (and punitive damages). (*Day v. Rosenthal* (1985) 170 Cal.App.3d 1125, 1160 [constructive fraud is an appropriate basis for an award of punitive damages].) However, Arabo cited no authority that a plaintiff is required to allege a separate constructive fraud cause of action where a fiduciary allegedly commits a misrepresentation.

13

Arabo's citation to *Schauer v. Mandarin Gems of Cal., Inc.* (2005) 125 Cal.App.4th 949 (*Schauer*) for the proposition that a claim for breach of fiduciary duty that is fraud-based must be specifically pled is similarly misplaced. *Schauer* examined whether the plaintiff had pled facts sufficient to state a claim for constructive fraud. (*Id.* at pp. 960-961.) *Schauer* did not involve a cause of action for breach of fiduciary duty and our independent research has not uncovered a case stating that a breach of fiduciary cause of action based in fraud must be specifically pled.[7]

Arabo asserts that plaintiffs' misrepresentation theory surprised him at trial because no version of the complaint alleged that Habib's letter was false, that Arabo misrepresented his involvement in the real estate transaction, or otherwise misled the board. Arabo also complains that plaintiffs did not disclose their misrepresentation theory until after the close of discovery, thus he never had an opportunity to depose key witnesses such as Habib, Donnet and other board members. Accordingly, Arabo contends that the judgment

---

[7]     Arabo's citation to *Robison v. Caster* (7th Cir. 1966) 356 F.2d 924 for this proposition is inapt because federal law requires that plaintiffs allege *any* claim that contains averments of fraud, including a fraudulent breach of fiduciary duty, with particularity. (*Id.* at p. 925, citing Fed. Rule Civ. Proc., § 9(b); see also *Borsellino v. Goldman Sachs Grp., Inc.* (7th Cir. 2007) 477 F.3d 502, 507 ["Rule 9(b) applies to 'averments of fraud,' not claims of fraud, so whether the rule applies will depend on the plaintiffs' factual allegations."].)

violated his right to due process. As we shall explain, no due process violation occurred.[8]

A "cause of action" is comprised of three core elements, namely (1) "a 'primary right' of the plaintiff"; (2) "a corresponding 'primary duty' of the defendant"; and (3) "a wrongful act by the defendant constituting a breach of that duty." (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 904.) " '[T]he primary right is simply the plaintiff's right to be free from the particular injury suffered. [Citation.] It must therefore be distinguished from the *legal theory* on which liability for that injury is premised: "Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief." ' " (*Ibid.*)

"A change of theory as to the basis of recovery or as to the measure of damages is not a change of cause of action or the substitution of a new and different action for the original." (*Wells v. Lloyd IV* (1936) 6 Cal.2d 70, 88.) For example, in addressing whether an amended complaint was barred by the statute of limitations, our high court stated that "the only substantial difference between the factual situations set forth in the original and the fifth amended complaint is that the former charged that the representations were negligently made while the latter charges that they were made with knowledge of their falsity. Despite the change in legal theory from an

---

8    In his opening brief, under "statement of appealability" Arabo contends we may review the trial court's order denying his new trial motion on appeal from the underlying judgment. Arabo, however, never argued that the trial court erred in denying his new trial motion and we deem the argument forfeited. (*Collin v. CalPortland Co.* (2014) 228 Cal.App.4th 582, 600 [contention not presented under separate heading, with supporting factual analysis, forfeited].)

15

action for negligence to one for fraud, it cannot be said that an entirely different cause of action is stated." (*Wennerholm v. Stanford University School of Medicine* (1942) 20 Cal.2d 713, 718.) Accordingly, "a shifting from one theory of liability to another" does not require amendment to conform to proof "when the basic facts are the same." (*Bruckman v. Parliament Escrow Corp.* (1987) 190 Cal.App.3d 1051, 1060 (*Bruckman*).)

The parties dispute whether the controversy surrounding the veracity of Habib's letter was uncovered before or after discovery closed. We are unable to ascertain from the record the date discovery closed. Nonetheless, the record reflects that during the discovery process Arabo had notice of plaintiffs' theory that he breached his fiduciary duty to NMA by misrepresenting his participation in the sale of the building. Briefly, in March 2017, plaintiffs' prior counsel sent a letter to defense counsel as part of settlement negotiations arguing that Arabo misrepresented material facts to the board. The head of plaintiff LS & SLG, Inc. also testified at his deposition that Arabo participated in presenting facts to the board regarding the bonus and that these facts influenced the board's vote.

Arabo acknowledged plaintiffs' misrepresentation theory in his trial brief stating: "Plaintiffs apparently intend to rely exclusively on their false contention that Mr. Arabo misrepresented his involvement with the sale of the NMA building to the board. However, the evidence at trial will show that Mr. Arabo made no such misrepresentation, and that the NMA board knew exactly how Mr. Arabo's participation in the sale process resulted in an increase in the sales price ultimately received."

16

Any variance between the allegation in the operative complaint and the proof presented at trial with respect to the bonus was not material under the circumstances of this case because Arabo was not "actually misled" to his prejudice. (Code Civ. Proc., §§ 469, 470; Cal. Const., art. VI, § 13 ["No judgment shall be set aside . . . as to any matter of pleading, . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."].) Arabo knew about plaintiffs' misrepresentation theory and the controversy surrounding the truth of Habib's letter.[9] When the issue exploded at trial, the court allowed the parties to question Habib and Donnet at length.[10]

Arabo's right to retain the bonus had been at issue since the inception of this action. The circumstances show that any variance between the pleading and proof was not material and that the case was fairly tried on the merits as though the variance had not existed. (*Buxbom v. Smith* (1944) 23 Cal.2d 535, 543 ["the matter of pleading becomes unimportant when a case is fairly tried upon the merits and under circumstances which indicate that nothing in the pleadings

---

[9] When trial commenced, both sides believed Habib would *disavow* his letter. Habib's testimony affirming the truth of the letter surprised both sides.

[10] Neither side deposed Habib, or sought leave to depose him after the close of discovery. Additionally, Arabo could have requested leave to call other board members to testify but did not do so.

misled the unsuccessful litigant to his injury"].)[11] To the extent plaintiffs' theory of liability may have shifted based on evidence uncovered after the close of discovery, this shift did "not require amendment to conform to proof when the basic facts [were] the same." (*Bruckman*, *supra*, 190 Cal.App.3d at p. 1060; *Smith v. Los Angeles Bookbinders Union* (1955) 133 Cal.App.2d 486, 495 (*Smith*) ["When the basic facts are the same a shifting from one theory of liability to another is not the substitution of a new cause of action."], *Smith* disapproved on other grounds in *MacLeod v. Tribune Pub. Co., Inc.* (1959) 52 Cal.2d 536, 551.)

On this record, we conclude that Arabo did not suffer a violation of his right to due process.

---

[11] Arabo's citation to cases for the proposition that a trial court cannot enter judgment on a claim outside the issues framed in the pleadings is misplaced because these cases all involved situations where the pleadings did not inform the defendant of the *relief* ultimately awarded by the trial court, or the trial court allowed evidence of damages disavowed by the plaintiff during discovery. (See *Campain v. Safeway Stores, Inc.* (1972) 29 Cal.App.3d 362, 364-366 [defendant's defense prejudiced when trial court allowed evidence on lost earnings when plaintiff stated during discovery that she was not seeking damages based on lost earnings]; *Brown v. North Ventura Road Development Company* (1963) 216 Cal.App.2d 227, 234 [appellate court reversed damages award because damages never requested in pleading]; *Clark v. Redlich* (1957) 147 Cal.App.2d 500, 505-506 [trial court erred by awarding defendants damages based on improper issuance of a preliminary injunction where no pleading sought damages]; *Sharp v. Big Jim Mines* (1940) 39 Cal.App.2d 435, 442-443 [trial court erred by enjoining the levy of further corporate assessments where the "sole question presented by the pleadings" was validity of a meeting].)

B.    *Alleged Hearsay Violation*

    1.    *Additional Background*

During trial, plaintiffs' counsel showed Habib an e-mail that Habib sent to him on September 1, 2017.  The e-mail pertained to a declaration that plaintiffs' counsel had prepared for Habib's signature.  When Arabo objected that the document had not been produced during discovery, plaintiffs' counsel stated that the document could be used to refresh the witness's recollection and was also a prior inconsistent statement.  The trial court overruled Arabo's leading and lack of foundation objections and plaintiffs' counsel used the document to refresh Habib's recollection.  Habib denied telling plaintiffs' counsel that Arabo told him what to put in the letter " 'word-for-word.' "

Plaintiffs then called attorney Wilson as a rebuttal witness to testify regarding prior inconsistent statements Habib made during the telephone conversations with plaintiffs' counsel.  Oram tendered a hearsay objection and argued that Wilson was not listed as a witness.  Arabo argued that because Habib had not been cross-examined, that there was nothing to rebut.  The trial court overruled these objections.

Wilson testified that he took contemporaneous notes of the conference call with Habib and e-mailed those notes to another attorney immediately after the call ended.  Plaintiffs' counsel asked to display the notes to impeach Habib.  Arabo did not object, but complained that he had never seen the exhibit.  The trial court allowed plaintiffs' counsel to display the notes to impeach Habib.  Later, the court overruled Arabo's hearsay objections to two questions asking Wilson whether he had written what was displayed.  During cross-

19

examination, Arabo's counsel asked Wilson numerous questions that Wilson answered by referring to the document.

During Habib's further direct examination, Arabo's counsel questioned Habib regarding the veracity of his letter. During cross-examination, plaintiffs' counsel extensively referred to four exhibits without objection and Habib testified regarding portions of these exhibits. The exhibits were: (1) Wilson's e-mail with notes taken during a telephone conference with Habib (Exhibit 591); (2) an unsigned declaration prepared by plaintiffs' counsel for Habib's signature with Habib's handwritten revisions (Exhibit 592); (3) a version of Habib's unsigned declaration with portions stricken out by Habib (Exhibit 607); and (4) an e-mail from one of plaintiffs' attorneys memorializing a conversation with Habib (Exhibit 608). We collectively refer to the four exhibits as "the exhibits."[12]

The following day, plaintiffs' counsel sought to admit the exbibits. NMA objected to exhibits 591 and 592 on hearsay grounds. Plaintiffs' counsel responded that the exhibits were admissible under Evidence Code[13] sections 1235 and 1241 as hearsay exceptions for prior inconsistent statements and contemporaneous statements. The court admitted the two exhibits as impeachment documents and under exceptions to the hearsay rule. Later, the trial court admitted exhibits 607 and 608 after plaintiffs used these exhibits without objection during trial.

---

[12]    In response to Habib's testimony, and instead of calling all of plaintiffs' attorneys to testify, the parties stipulated that the testimony of each of plaintiffs' attorneys would be consistent with Wilson's testimony.

[13]    Undesignated statutory references are to the Evidence Code.

2. *Analysis*

Arabo asserts that the trial court erred in admitting the exhibits because they (1) improperly made plaintiffs' counsel a witness at trial and (2) did not qualify for admission under an exception to the hearsay rule. Plaintiffs respond that Arabo forfeited this challenge by failing to object to the exhibits at trial and not providing any meaningful argument to support his claim that an objection would have been futile.

Generally, " 'the failure to object to errors committed at trial relieves the reviewing court of the obligation to consider those errors on appeal.' " (*In re Seaton* (2004) 34 Cal.4th 193, 198.) Although we are usually "not prohibited from reaching a question that has not been preserved for review by a party" and may often exercise our discretion to do so (*People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6), this general rule does not apply "when the issue involves the admission (Evid. Code, § 353) or exclusion (*id.*, § 354) of evidence." (*Ibid.*)[14] This case presents an example of why objections need to be specifically and timely presented to the trial court to preserve the issue on appeal.

Plaintiffs' counsel refreshed Habib's recollection using an e-mail that Habib sent to plaintiffs' counsel on September 1, 2017, regarding the declaration counsel had prepared for Habib's signature. Upon reviewing the document, Habib admitted that he made the blue markings on the document. The court overruled Arabo's leading and lack of foundation objections.

---

[14] Section 353, subdivision (a) provides: "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless: [¶] (a) There appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and *so stated as to make clear the specific ground of the objection or motion . . . .*" (Italics added.)

A witness is permitted to "use[] a writing to refresh his memory with respect to any matter about which he testifies." (§ 771, subd. (a).) A witness's "[m]emory may be refreshed using a writing that is not admissible into evidence." (*In re Berman* (1989) 48 Cal.3d 517, 525.) Additionally, leading questions are permissible on direct examination to stimulate a witness's recollection. (*People v. Williams* (1997) 16 Cal.4th 635, 672.) Here, the trial court allowed plaintiffs' counsel to use the document to refresh Habib's recollection, a ruling not challenged by Arabo on appeal. (*Howard v. County of San Diego* (2010) 184 Cal.App.4th 1422, 1432 [issue not raised before the trial court forfeited].)

Thereafter, the trial court allowed Wilson to testify. In his reply brief, Arabo argues that the trial court erred by allowing testimony from plaintiffs' attorneys. Arabo claims that the testimony created chaos that deprived him of due process. Presumably, Arabo tendered this argument in his reply brief because plaintiffs argued in their respondent's brief that attorneys may provide impeachment evidence in support of their own clients. (*American Indian Model Schools v. Oakland Unified School Dist.* (2014) 227 Cal.App.4th 258, 275-276 [although appellate courts will not ordinarily consider issues newly raised in the reply brief, an issue is not new if it rebuts arguments made by the respondent in respondent's brief].)

Arabo cited no authority directly supporting his argument that the court erred in permitting Wilson to provide impeachment

testimony.[15]  Rather, Arabo relies on the California Rules of Professional Conduct, which are "intended to regulate professional conduct of lawyers" and provide that "[a] willful violation of any of these rules is a basis for discipline."  (Cal. Rules of Prof. Conduct, rule 1.0, subds. (a), (b).)  Arabo overlooks section 700, which provides, "Except as otherwise provided by statute, every person, irrespective of age, is qualified to be a witness and no person is disqualified to testify to any matter."  Moreover, our high court recently reaffirmed that " 'a trial court may not deny the defendant the right to present . . . evidence through the testimony of his counsel, notwithstanding the provisions relating to testimony by counsel in the Rules of Professional Conduct.' " (*People v. Silveria and Travis* (2020) 10 Cal.5th 195, 278-279.)

An attorney has a duty to represent a client zealously within the bounds of the law.  (*Hawk v. Superior Court* (1974) 42 Cal.App.3d 108, 126.)  Under the unusual circumstances of this case, we cannot conclude that the trial court erred in admitting Wilson's testimony for impeachment.

Significantly, Arabo did not object to plaintiffs' request to display Wilson's written notes of the conference call with Habib on hearsay

---

[15]  A witness's credibility may be attacked by any party, including the party calling the witness.  (§ 785.)  Additionally, except as otherwise provided by statute, the trier of fact may consider in determining the credibility of a witness "*any matter that has any tendency in reason* to prove or disprove the truthfulness of his [or her] testimony at the hearing."  (§ 780, italics added.)  Arabo did not argue to the trial court that Wilson's testimony did not qualify as impeachment evidence and forfeited any such challenge on appeal. (§ 353, subd. (a); *People v. Boyette* (2002) 29 Cal.4th 381, 424 [" 'Specificity is required both to enable the court to make an informed ruling on the motion or objection and to enable the party proffering the evidence to cure the defect in the evidence.' "].)

grounds and failed to preserve this challenge on appeal. (*Roe v. Halbig* (2018) 29 Cal.App.5th 286, 309-310 [plaintiff forfeited "any challenge to hearsay statements contained in the declaration . . . by failing to object on that basis below"].)[16] During cross-examination, Arabo's counsel then asked Wilson numerous questions which Wilson answered by referring to the document. Finally, while cross-examining Habib, plaintiffs' counsel extensively referred to the exhibits without objection, and Habib testified regarding portions of the exhibits without objection.

The following day, when plaintiffs' counsel sought to admit the exibits, NMA objected to exhibits 591 and 592 (Wilson's e-mail with notes taken during a telephone conference with Habib and Habib's unsigned declaration with his handwritten revisions) on hearsay grounds, Arabo did not join in this objection. (See *People v. Wilson* (2008) 44 Cal.4th 758, 793 ["Generally, failure to join in the objection or motion of a codefendant constitutes a waiver of the issue on appeal."].) The court admitted the two exhibits as impeachment documents and under exceptions to the hearsay rule. The trial court also admitted exhibits 607 and 608 (Habib's unsigned declaration with portions stricken out by Habib and an e-mail from one of plaintiffs' attorneys memorializing a conversation with Habib) after plaintiffs used these exhibits without objection during trial.

Arabo argues that a joint in limine motion seeking to exclude "evidence outside the facts/issues presented in Plaintiffs' Second

---

16    During Wilson's testimony, the court overruled Arabo's hearsay objections to two questions asking Wilson whether he had written what was displayed. Arabo does not argue that the trial court erred in overruling these two objections and forfeited any such challenge on appeal.

Amended Complaint. . . ." preserved a hearsay objection to the exhibits on appeal. We disagree.

A motion in limine to exclude evidence is sufficient to preserve an objection if the motion (1) is directed to a particular, identifiable body of evidence; (2) states a specific legal ground for exclusion that is subsequently raised on appeal; and (3) is made at a time before or during trial when the trial court can determine the evidentiary issue in its appropriate context. (*People v. Morris* (1991) 53 Cal.3d 152, 190 (*Morris*), disapproved on another ground in *People v. Stansbury* (1995) 9 Cal.4th 824, 830, fn. 1.) If each of these conditions is satisfied, defense counsel would be "justified in concluding that a mere repetition of the same objection advanced on the motion in limine would serve no useful purpose." (*Morris*, at p. 189.)

In this matter, the motion in limine was wholly insufficient to preserve a hearsay objection to the exhibits for appeal. As a preliminary matter, Oram filed the motion in limine, not Arabo. Although Arabo claims that he joined in the motion, he failed to provide a record cite to the purported joinder. (Cal. Rules of Court, rule 8.204(a)(1)(C) [appellate brief must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears."].)[17] Assuming, for the sake of analysis, that a proper joinder exists, the motion sought to exclude irrelevant evidence and evidence not relevant to the transactions contained in the operative complaint. The motion was not directed to a particular identifiable body of evidence that would have allowed the trial court to

---

[17] Undesignated rule references are to the California Rules of Court.

25

determine the evidentiary question in the same context as it was presented at trial. (*Morris*, *supra*, 53 Cal.3d at p. 190.) Nor did the motion raise a hearsay objection. (*Ibid.*) Accordingly, the in limine motion failed to preserve a hearsay objection to the exhibits for appellate review.

Finally, even assuming the trial court erred by admitting the exhibits, the error was harmless because the trial court, sitting as the trier of fact, had already heard extensive testimony regarding the exhibits from both Wilson and Habib without objection. (See *Huang v. L.A. Haute* (2003) 106 Cal.App.4th 284, 292, fn. 9 [alleged error in refusing to admit medical records showing what plaintiff told her doctor was harmless because records duplicated plaintiff's testimony].) Accordingly, we reject Arabo's argument that the trial court prejudicially erred when it admitted the exhibits into evidence.

C. *Remaining Arguments*

In an abundance of caution, should we agree that the trial court improperly ordered him to return the bonus, Arabo argues that no alternative grounds support affirmance of the court's order regarding the bonus. Because we rejected Arabo's arguments and affirmed the trial court's order that Arabo must return the bonus to NMA, the parties' arguments whether alternative grounds exist to support the court's order are moot and we need not address them.

In his reply brief, Arabo argues that an undisclosed payment to Donnet created prejudicial error that requires reversal because it is reasonably probable that a result more favorable to him would have been reached in the absence of the error. Arabo did not tender this argument in his opening brief under a separate heading or subheading.

(Rule 8.204(a)(1)(B).)  Nonetheless, because plaintiffs argued this issue in their respondent's brief, we will consider the argument on its merits.

After Donnet's initial testimony, and before Habib's second round of testimony, the trial court stated that if Habib testified again it wanted further testimony from Donnet.  In their post-trial costs memorandum, plaintiffs sought to recover $3,125 in fees paid to Donnet for her second round of testimony.  Plaintiffs' counsel represented to the trial court that, because they called Donnet a second time at the trial court's request, plaintiffs agreed to compensate her for her time going forward.  The trial court taxed these costs finding that because Donnet was not an expert witness, she was only entitled to the ordinary witness fee of $35.  The court also concluded that the undisclosed payment did not warrant a new trial.

Relying on federal authority, Arabo contends that the payment to Donnet was inappropriate.  Arabo's reliance on these federal cases is inapt because the California Rules of Professional Conduct address the issue.[18]  Specifically, the California Rules of Professional Conduct, rule 3.4 (formerly rule 5-310) states, "A lawyer shall not:  [¶] . . . [¶] (d) directly or indirectly pay, offer to pay, or acquiesce in the payment

---

[18]    See *Mataya v. Kingston* (7th Cir. 2004) 371 F.3d 353, 359 [paying a witness, other than an expert witness, for testimony unlawful in federal trials, 18 U.S.C. § 201(c)(2)]; *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters* (S.D.Fla.1994) 865 F.Supp. 1516, 1524 [improper to pay an occurrence witness any fee for testifying under Florida Rules of Professional Conduct]; *U.S. v. Cervantes-Pacheco* (5th Cir. 1987) 826 F.2d 310, 315 [jury must evaluate the testimony of a compensated witness]; *Skin Pathology Associates, Inc. v. Morgan Stanley & Co. Inc.* (S.D.N.Y. 2014) 27 F.Supp.3d 371, 377-378 [nondisclosure of fee-sharing arrangement a crime under federal regulations].

27

of compensation to a witness contingent upon the content of the witness's testimony or the outcome of the case." (See also, State Bar of California, Committee on Professional Responsibility and Conduct, Formal Opinion No. 1997-149 (1997) [attorney may pay non-expert witness for the time spent preparing for a deposition or a trial, but the attorney must comply with the requirements of rule 5-310(B) of the California Rules of Professional Conduct].)

Arabo cites absolutely no evidence showing that plaintiffs' payment to Donnet was contingent upon the content of her testimony or the outcome of the case. Rather, in a sworn declaration, plaintiffs' counsel states that Donnet submitted an invoice for her time spent reviewing documents prior to her second court appearance. On this record, we reject Arabo's implied contention that plaintiffs' counsel and Donnet (who is also a licensed attorney), agreed that plaintiffs' $3,125 payment was contingent upon the content of Donnet's testimony or the outcome of the case.

D.     *Sanctions Motions*

Plaintiffs request sanctions against Arabo and his appellate counsel for pursuing a frivolous appeal. (Code Civ. Proc., § 907; rule 8.276.) Arabo argues that plaintiffs' motion should be stricken and lacks merit. Should we agree with this assertion, Arabo suggests we consider sanctions against plaintiffs and their appellate counsel for filing the motion.

Code of Civil Procedure section 907 provides that "[w]hen it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just." Additionally, rule 8.276(a)(1) allows the court to impose

28

sanctions on a party or an attorney for the taking of a frivolous appeal or appealing solely to cause delay.

"[S]anctions should be used sparingly to deter only the most egregious conduct." (*Kleveland v. Siegel & Wolensky, LLP* (2013) 215 Cal.App.4th 534, 557 (*Kleveland*).) " '[A]ny definition [of a frivolous appeal] must be read so as to avoid a serious chilling effect on the assertion of litigants' rights on appeal. Counsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win on appeal. An appeal that is simply without merit is *not* by definition frivolous and should not incur sanctions.' " (*In re Reno* (2012) 55 Cal.4th 428, 513.) "An unsuccessful appeal, . . . ' "should not be penalized as frivolous if it presents a unique issue which is not indisputably without merit, or involves facts which are not amenable to easy analysis in terms of existing law, or makes a reasoned argument for the extension, modification, or reversal of existing law." ' " (*Kleveland*, at p. 557.) Whether to impose appellate sanctions is a matter within our broad discretion. (*Winick Corp. v. County Sanitation Dist. No. 2* (1986) 185 Cal.App.3d 1170, 1181-1182.)

"[A]n appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 (*Flaherty*).) "In determining whether an appeal indisputably has no merit, California cases have applied both subjective and objective standards. The subjective standard looks to the motives of the appealing party and his or her attorney, while the

29

objective standard looks at the merits of the appeal from a reasonable person's perspective.  [Citation.]  Whether the party or attorney acted in an honest belief there were grounds for appeal makes no difference if any reasonable person would agree the grounds for appeal were totally and completely devoid of merit." (*Kleveland*, *supra*, 215 Cal.App.4th at pp. 556-557.)  The subjective and objective "standards are often used together, with one providing evidence of the other.  Thus, the total lack of merit of an appeal is viewed as evidence that appellant must have intended it only for delay." (*Flaherty*, at pp. 649-650.)

Applying these standards, we are not convinced that this appeal is totally and indisputably without merit.  Although we ultimately determined that Arabo's due process and hearsay arguments lacked merit, we cannot say they were objectively devoid of any merit as to warrant sanctions.  Because the appeal was not objectively frivolous, we also conclude it was not taken solely for delay.  Exercising our broad discretion, we therefore conclude that plaintiffs are not entitled to sanctions in this case.

Arabo requests monetary sanctions against plaintiffs and their appellate counsel for filing the sanctions motion.  (Rule 8.276(a)(3).)  Arabo makes this request in his opposition to plaintiffs' sanctions motion and did not serve and file a separate motion under the rules governing appellate motion procedure, as required by rules 8.54(a) and 8.276(b).  We therefore deny the request for sanctions.  (*Saltonstall v. City of Sacramento* (2014) 231 Cal.App.4th 837, 858 [respondent's request for sanctions made in brief denied because the respondent did not file a separate motion for sanctions].)

E. *Attorney's Fees Under the Private Attorney General Statute*

As an alternative to sanctions, plaintiffs seek their attorney's fees under the private attorney general statute. (Code Civ. Proc., § 1021.5.) Plaintiffs admit that they did not seek an attorney's fee award before the trial court based on the private attorney general statute and Arabo correctly argues they forfeited this claim by not making it before the trial court. (*California Teachers Ass'n v. Mendocino Unified School Dist.* (2001) 92 Cal.App.4th 522, 530 [party cannot raise request for attorney's fees under Code of Civil Procedure section 1021.5 for first time on appeal]; *Dowling v. Farmers Ins. Exchange* (2012) 208 Cal.App.4th 685, 696 ["We generally will not consider an argument asserted for the first time on appeal."].) In their reply, plaintiffs clarify their argument, stating that they are "not seeking their *trial* fees on the basis of the Private Attorney General Statute—merely their *appellate* fees."

Code of Civil Procedure section 1021.5 permits a court to award attorney's fees to a successful party in any action which has resulted in the enforcement of an important right affecting the public interest if certain prerequisites are satisfied. " 'An award of attorney fees under [Code of Civil Procedure] section 1021.5 requires the applicant to meet three criteria: (1) the action resulted in the enforcement of an important right affecting the public interest; (2) a significant pecuniary or nonpecuniary benefit was conferred on a large class of persons; and (3) the necessity of private enforcement and the attendant financial burden thereof make the award appropriate. Whether the applicant has proved each of these criteria is a matter primarily vested in the

31

trial court.' " (*Hogar Dulce Hogar v. Community Development Com. of City of Escondido* (2007) 157 Cal.App.4th 1358, 1364.)

Plaintiffs' claim for appellate attorney's fees is based on the trial court's suspension of the board and appointment of a receiver for NMA. Plaintiffs argue this relief enforced important rights affecting the public interest. Plaintiffs fail to explain how this relief, which was not at issue in this appeal, entitles them to recover their appellate attorney's fees. We reject the argument and deny plaintiffs' request for an award of appellate attorney's fees.

## DISPOSITION

The judgment is affirmed. All requests for sanctions are denied. Plaintiffs are entitled to recover their costs on appeal.


IRION, J.

WE CONCUR:



BENKE, Acting P. J.



DO, J.